IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| AMIDEE 2006 PREFERRED-CORPUS, LTD. D/B/A THE ATRIUM, | § § § | CASE NO. 10-20007 |
| AMIDEE CAPITAL GROUP, INC., | § § | CASE NO. 10-20041 |
| AMIDEE 2006 PREFERRED REAL ESTATE INCOME PROGRAM, LTD., | § § § | CASE NO. 10-20042 |
| AMIDEE OAK POINTE APARTMENTS, LLC, | § § § | CASE NO. 10-20043 |
| AMIDEE 2004-I TAX DEED AND CERTIFICATE INVESTMENT PROGRAM, LTD., | § § § § | CASE NO. 10-20044 |
| AMIDEE 2005-II TEXAS DEED INVESTMENT PROGRAM, LTD., | § § § | CASE NO. 10-20045 |
| AMIDEE 2006-III TAX DEED & REAL ESTATE INVESTMENT PROGRAM, LTD., | § § § § | CASE NO. 10-20046 |
| AMIDEE 2006 COMMERCIAL REAL ESTATE INCOME PROGRAM, LTD., | § § § | CASE NO. 10-20047 |
| AMIDEE 2007-I CRE INCOME FUND, LTD., | § § § | CASE NO. 10-20048 |
| AMIDEE 2008-I CRE INCOME FUND, LTD., | § § § | CASE NO. 10-20049 |
| AMIDEE 2009-I CRE INCOME FUND, LTD., | § § § § | CASE NO. 10-20050 |
| Debtors. | § | CHAPTER 11 |

**DEBTORS' EXPEDITED MOTION FOR ORDER**
**DIRECTING JOINT ADMINISTRATION OF CASES**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THE DEBTORS HAVE REQUESTED EXPEDITED CONSIDERATION OF THIS MOTION.**

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Amidee Capital Group, Inc. ("ACG" or the "Debtor") on behalf of itself and its affiliates, all debtors and debtors in possession in the above referenced bankruptcy proceedings, filing this Expedited Motion for Order Directing Joint Administration of Cases (the "Motion") and in support hereof, respectfully state as follows:

## I.
## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The relief requested may be granted in accordance with the provisions of Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Bankruptcy Local Rule 1015-1.

## II.
## BACKGROUND

2.  On January 4, 2010 (the "Corpus Petition Date"), Amidee 2006 Preferred-Corpus, Ltd. ("Amidee Corpus"), a subsidiary of ACG, filed a voluntary petition for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court").  On January 17, 2010 (the "Petition Date"), ACG and nine of its other subsidiaries also filed voluntary petitions for relief under chapter 11 in this Court.[1]  The Debtors' bankruptcy cases are collectively referred to as the "Reorganization Cases."

3.  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors remain in possession of their property and are managing their businesses as debtors in possession.  No trustee or examiner has been appointed in the Reorganization Cases.

4.  ACG is a Texas corporation formed in 2003 to acquire, renovate, operate and resell real property in Texas and throughout the United States.  Initially, ACG focused its operations on the purchase of tax lien certificates on real property in Houston and the surrounding area.  The "tax deed" properties acquired by ACG were purchased using funds raised pursuant to private placements of capital raised by ACG through the sale of limited partnership interests in Subsidiary Debtors—Amidee 2004 Tax, Amidee 2005 Tax and Amidee

---

[1] The ACG subsidiaries who filed bankruptcy petitions on January 17, 2010, were: Amidee 2004-I Tax Deed and Certificate Investment Program, Ltd. ("Amidee 2004 Tax"); Amidee 2005-II Tax Deed Investment Program, Ltd. ("Amidee 2005 Tax"); Amidee 2006-III Tax Deed and Real Estate Investment Program, Ltd. ("Amidee 2006 Tax"); Amidee 2006 Preferred Real Estate Income Program, Ltd. ("Amidee 2006 Preferred"); Amidee 2006 Commercial Real Estate Income Program, Ltd. ("Amidee 2006 Commercial"); Amidee 2007-I CRE Income Fund, Ltd. ("Amidee 2007"); Amidee 2008-I CRE Income Fund, Ltd. ("Amidee 2008"); Amidee 2009-I CRE Income Fund, Ltd. ("Amidee 2009"); and Amidee Oak Pointe Apartments, LLC ("Amidee Oak Pointe") (collectively with Amidee Corpus, the "Subsidiary Debtors" and with ACG, the "Debtors").

2006 Tax. Much of the real property ultimately acquired by ACG using the capital raised for these tax deed programs was either raw land or single family homes.

5. In 2006, ACG expanded its investment activities beyond raw land and single family homes and began actively looking to acquire and operate apartment complexes and office buildings. To fund these new acquisitions, in 2006, ACG raised additional capital through the sale of limited partnership interests in two additional limited partnerships—Amidee 2006 Preferred and Amidee 2006 Commercial. In 2007, 2008 and 2009, ACG formed an additional limited partnership each year and raised capital through the sale of the limited partnership interests in those entities—Amidee 2007, Amidee 2008 and Amidee 2009.

6. In the six years from 2004 to 2009, ACG raised approximately $24 million through the sale of limited partnership interests. Combined, approximately 350 different entities or individuals own limited partnership interests in one or more of the Subsidiary Debtors. While the number and identity of the limited partners vary for each of the Subsidiary Debtors, ACG is the sole general partner for each Subsidiary Debtor.[2]

7. In addition to the Subsidiary Debtors, ACG owns significant stakes in certain non-debtor entities. Specifically, ACG owns 100% of the outstanding shares of Amidee Hotels & Resorts, Inc., a Texas corporation, that owns and operates the Amidee Hotel Niagara in Niagara Falls, New York and the Parkway Plaza Hotel and Convention Center in Casper, Wyoming.[3] In addition, ACG is the managing member of the Atrium LLC, a New Mexico limited liability

---

[2] Amidee Oak Pointe is actually an LLC, and ACG is therefore its sole managing member, rather than general partner. Amidee Oak Pointe and Amidee Corpus are special purpose entities formed to own a single piece of real property, and therefore third party investors do not own limited partnership interests (or non-managing membership interests) in these entities. Instead, all of Amidee Corpus' limited partnership interests are owned by Amidee 2008 and all of the non-managing membership interests in Amidee Oak Pointe are owned by Amidee 2007.

[3] Amidee Hotel Niagara is owned by Amidee Hotel Niagara, LLC and Parkway Plaza is owned by Amidee Wyoming, LLC both of which are 100% owned by Amidee Hotels & Resorts, Inc.

4

company that owns the Atrium office building in Albuquerque, New Mexico. While these non-debtor entities are ultimately controlled by ACG and share some of the liquidity issues that triggered the bankruptcy filing of the Debtors, ACG determined that chapter 11 filings for these entities, at this time, would not be beneficial for those entities, their creditors or the properties that they own. ACG, however, intends to continue to manage these entities and their properties during the course of these Reorganization Cases.

8.      In addition to the funds raised from the sale of limited partnership interests, ACG has in the past obtained funds for the acquisition, renovation and operation of the various properties it and its subsidiaries own through secured loans from various lending institutions and individuals. As of the Petition Date, ACG or one of the Subsidiary Debtors was the primary borrower on approximately $10.5 million in loans secured by various real property owned by the Debtors. In addition to these direct obligations of some of the Debtors, some of ACG's non-debtor subsidiaries are also borrowers on approximately an additional $11.5 million in secured debt.[4]

9.      ACG estimates that the portfolio consisting of the real property owned directly by one of the Debtors is worth approximately $26.5 million. In addition, although the Atrium office building in Albuquerque, New Mexico is owned by the Atrium LLC, a non-debtor, the Debtors own 75% of the membership interests in the Atrium LLC. ACG, the managing member of Atrium LLC, believes that the Atrium building is worth more than $2.8 million after payment of the outstanding secured debt against that property.[5]

---

[4] ACG is a guarantor of approximately $9.6 million of this amount which was borrowed by Amidee Hotels & Resorts.

[5] Atrium LLC is the borrower and none of the Debtors has guaranteed this loan, thus it is not an obligation of the Debtors' bankruptcy estates.

10. All of the apartment complexes and office buildings owned by the Debtors are managed and operated directly by ACG personnel. ACG personnel are responsible for all aspects of the acquisition of properties as well as the marketing and eventual sale of those properties. Because ACG manages all aspects of the Subsidiary Debtors' operations, none of the Subsidiary Debtors has its own employees. Up until September 2009, ACG maintained a staff of approximately 30 employees and contract personnel to run the operations of ACG and all of its subsidiaries, including the Subsidiary Debtors. In an effort to reduce its overhead, in September 2009, ACG significantly reduced its staff by eliminating all personnel except those essential to keeping the properties operating. As of the Petition Date, ACG had 9 full time employees, and 6 contract workers.[6]

11. During the five years from 2004 to 2009, ACG successfully managed the real estate portfolio that it and its subsidiaries had acquired. In addition to servicing the secured debt incurred in the acquisition and renovation of numerous properties, ACG made in excess of $7 million in interest payments and distributions to the numerous investors in the various real estate entities it manages. By mid-2009, however, a number of factors, including the overall downturn in the United States' economy and the real estate market in particular, contributed to making ACG's cash flow extremely tight. ACG and its subsidiaries began having difficulty paying ongoing operating expenses and servicing their secured debt while still making fixed distributions to limited partners in the Subsidiary Debtors. In September 2009, ACG informed the limited partners in the Subsidiary Debtors that it was suspending regular partner distributions until it could get its cash flow difficulties under control.

---

[6] James T. Cook and Judith B. Cook, ACG's CEO and President, respectively, are not included in these employment numbers as they have voluntarily gone without salary since September 2009.

12.     Unfortunately, the 4th quarter of 2009 did not bring improvement in the Debtors' cash flow situation. Although ACG actively marketed most of the Debtors' real estate portfolio, it was unable to locate buyers for the properties at acceptable prices. In December 2009, ACG retained Douglas J. Brickley of LECG, LLC to advise it with regard to possible restructuring options for ACG and its subsidiaries and help the Debtors to manage their worsening liquidity crisis.

13.     On January 4, 2010, ACG determined that filing a bankruptcy petition for Amidee Corpus was necessary in order to prevent foreclosure the next day on the Atrium office building in Corpus Christi, Texas. ACG has since reached agreement with a buyer for the property for an amount in excess of the secured lender's debt. Although the bankruptcy of Amidee Corpus and subsequent sale contract helped to avoid the immediate emergency that triggered the initial bankruptcy filing, ACG determined that no long-term solution to its liquidity crisis was likely without an opportunity to restructure the Debtors through a chapter 11 bankruptcy process. Thus, on January 16, 2010, ACG's board of directors authorized chapter 11 filings for the Debtors and appointed Douglas Brickley as the Chief Restructuring Officer for ACG and the Subsidiary Debtors. Pursuant to the board's resolution, Mr. Brickley has been given exclusive control of the Debtors' operations in bankruptcy and the restructuring effort. ACG believes that the bankruptcy filings and the experienced leadership of Mr. Brickley will provide the Debtors with the best chance of reorganizing their operations and paying the greatest possible return to the Debtors' creditors and equity security holders.

## III.
## RELIEF REQUESTED

14. By this Motion, the Debtors request that this Court enter an order providing for the joint administration of the above-captioned cases, and the consolidation, for procedural and administrative purposes only, of the Debtors' chapter 11 cases under the case number assigned to Amidee Capital Group, Inc., as it is the general partner or managing member of the Subsidiary Debtors. Consistent with Bankruptcy Local Rule 1015-1, the Debtors also request an order of the Court allowing (i) one disclosure statement and plan of reorganization to be filed in the Debtors' cases; and (ii) parties to request joint hearings on matters pending in any of the jointly administered cases.

15. Bankruptcy Rule 1015(b) provides that if two or more petitions for relief are pending in the same court by or against a debtor and an affiliate, the court may order, without notice or hearing, a joint administration of the estates. The Debtors are "affiliates" as that term is defined under Section 101(2) of the Bankruptcy Code. Accordingly, this Court is authorized to grant the relief requested.

16. The Debtors request that the official caption to be used by all parties in all pleadings in the jointly administered cases be as follows (the "Simplified Caption"):

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 10-20041-C-11** |
| | § | |
| **AMIDEE CAPITAL GROUP, INC., ET AL.,** | § | **CHAPTER 11** |
| | § | |
| **DEBTORS.** | § | **(Jointly Administered)** |

8

## IV.
## BASIS FOR RELIEF

17. Many of the motions, hearings and orders that will be involved in these chapter 11 cases will affect each debtor. Joint administration of these cases is necessary to avoid the time and expense associated with filing duplicates of such motions and preparing duplicate orders as would be required under separate administration. Joint administration will, therefore, facilitate a more efficient administrative process, unburdened by various procedural difficulties anticipated in the administration of multiple separate related chapter 11 cases. The Court (and the Office of the Clerk) will also be relieved of the burden of entering duplicate orders and keeping duplicate files. Finally, supervision of the administrative aspects of the cases by the Office of the United States Trustee will be simplified.

18. Joint administration of these cases will not adversely affect the rights of the Debtors' respective creditors because the relief sought is purely procedural. Each Debtor's assets will remain segregated in its individual estate, and creditors will be instructed to file claims against only the debtor or debtors allegedly liable therefore. In fact, parties-in-interest will be better able to protect their rights because they will be entitled to receive notices in all of the Debtors' respective proceedings. Lastly, joint administration will likely enhance the potential distribution to creditors by reducing the costs associated with administering many separate cases and thereby preserving the assets of the estates.

19. By reason of the foregoing, the best interests of the Debtors and their creditors would be served by joint administration of the above-captioned cases.

## V.
## NOTICE

20. No trustee, examiner, or statutory creditors' committee has been appointed in the Debtors' chapter 11 cases. Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of Texas; (ii) each of the Debtors' pre-petition secured lenders; (iii) the twenty (20) largest unsecured creditors in these Reorganization Cases; and (iv) the Internal Revenue Service. In light of the nature of the relief requested, the Debtors submit that no other or further notice be provided.

21. No previous request for the relief sought in herein has been made to this or any other Court.

WHEREFORE, each of the Debtors respectfully request entry of an order, substantially in the form attached hereto, (a) authorizing joint administration of the above-captioned cases, and (b) granting such other and further relief as is just and proper under the circumstances. Respectfully submitted on the 18th day of January, 2010.

**OKIN ADAMS & KILMER LLP**

By: ___/s/ *Sara Mya Patterson*___
Matthew S. Okin (TB# 00784695)
mokin@oakllp.com
Sara Mya Patterson (TB# 24062938)
spatterson@oakllp.com
1113 Vine St. Suite 201
Houston, TX  77002
Tel: (713) 228-4100
Fax:      (888) 865-2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**