IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-20041 |
| | § | |
| AMIDEE CAPITAL GROUP, INC., ET AL., | § § § | CHAPTER 11 |
| | § | (Jointly Administered) |
| DEBTORS. | | |

**DEBTORS' MOTION FOR ORDER (I) AUTHORIZING AND APPROVING
SALE OF REAL PROPERTY IN CORPUS CHRISTI, TEXAS AND
(II) AUTHORIZING DEBTOR TO USE SALE PROCEEDS TO PAY CERTAIN
CLAIMS AND EXPENSES ASSOCIATED WITH THE REAL PROPERTY**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Amidee Capital Group, Inc. ("ACG" or the "Debtor") on behalf of itself and its affiliates, all debtors and debtors in possession in the above referenced bankruptcy proceedings, filing this Motion for Order (I) Authorizing and Approving Sale of Real Property in Corpus Christi, Texas and (II) Authorizing Debtor to Use Sale Proceeds to Pay Certain Claims

and Expenses Associated with the Real Property (the "<u>Motion</u>"), pursuant to §§ 105 and 363 of the Bankruptcy Code, and in support hereof, respectfully states as follows:

## I.
## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## BACKGROUND

2. On January 4, 2010 (the "<u>Petition Date</u>"), Amidee 2006 Preferred-Corpus, Ltd. d/b/a the Atrium ( "<u>Amidee-Corpus</u>"), a Texas limited partnership, filed a voluntary petition for relief under chapter 11, title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "<u>Court</u>").

3. ACG, a Texas corporation, is Amidee-Corpus' sole general partner and owns one-percent (1%) of its partnership interests. Amidee-Corpus' sole limited partner is Amidee 2008-I CRE Income Fund, Ltd. ("<u>Amidee 2008</u>"), a Texas limited partnership that owns the remaining ninety-nine percent (99%) of the Amidee-Corpus' partnership interests. Amidee-Corpus is a special purpose entity that exists for the sole purpose of operating a single real property asset, the office building located at 5402 S. Staples, Corpus Christi, Texas which is otherwise known as the Atrium (the "<u>Atrium</u>" or the "<u>Real Property</u>").

4. On January 17, 2010, ACG and nine of its other subsidiaries, including Amidee 2008, filed voluntary petitions for relief under chapter 11 in this Court.[1] The Debtors' bankruptcy cases are collectively referred to as the "Reorganization Cases." On January 21, 2010, the Court entered an order (Doc. #15) directing that all eleven Reorganization Cases be jointly administered under ACG's bankruptcy case which is Case No. 10-20041. Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors are managing their property as debtors in possession. No trustee or examiner has been appointed in these Reorganization Cases.

5. ACG is in the business of owning and managing real estate through its own holdings and through various limited partnerships such as Amidee-Corpus and Amidee 2008. In exchange for an annual fee of 3% of gross revenues, ACG manages the Real Property and other similar properties owned by its subsidiaries and markets them for sale when a sale is deemed necessary.

6. In order to finance the purchase of the Atrium, Amidee-Corpus obtained a commercial loan from Key Bank, N.A. In connection with the loan, ACG, on Amidee-Corpus' behalf, signed a Commercial Principal Plus Interest Adjustable Rate Note with Balloon Payment Maturity Date (the "Note") payable to Key Bank in the amount of $1,270,000. The Note is secured by a Deed of Trust Assignment of Leases and Rents, and Security Agreement (together with the Note, the "Loan Documents"). Since making the, Key Bank has sold the Note to NCN Lending, LLC ("NCN"), the current holder of the Note. ACG does not know the exact amount

---

[1] The ACG subsidiaries who filed bankruptcy petitions on January 17, 2010, were: Amidee 2004-I Tax Deed and Certificate Investment Program, Ltd. ("Amidee 2004 Tax"); Amidee 2005-II Tax Deed Investment Program, Ltd. ("Amidee 2005 Tax"); Amidee 2006-III Tax Deed and Real Estate Investment Program, Ltd. ("Amidee 2006 Tax"); Amidee 2006 Preferred Real Estate Income Program, Ltd. ("Amidee 2006 Preferred"); Amidee 2006 Commercial Real Estate Income Program, Ltd. ("Amidee 2006 Commercial"); Amidee 2007-I CRE Income Fund, Ltd. ("Amidee 2007"); Amidee 2008-I CRE Income Fund, Ltd. ("Amidee 2008"); Amidee 2009-I CRE Income Fund, Ltd. ("Amidee 2009"); and Amidee Oak Pointe Apartments, LLC ("Amidee Oak Pointe") (collectively with Amidee Corpus, the "Subsidiary Debtors" and with ACG, the "Debtors").

currently due to NCN under the Note, but believes that the principal balance of the Note as of the Petition Date was approximately $1,262,183.

7. After the purchase of the Real Property, the Debtors intended to continue to operate the property and further develop the property's cash flow. Although the Debtors have made improvements to the building and attempted to obtain more tenants, the Real Property has incurred negative cash flows from operations, and Amidee-Corpus has therefore found itself in a liquidity crisis. On November 25, 2009, NCN sent Amidee-Corpus a Notice of Acceleration of Debt stating that pursuant to the Loan Documents, NCN was revoking Amidee-Corpus' license to collect rents and that the rents should be immediately forwarded to NCN. From the date of receipt of the Notice of Acceleration until at least the Petition Date, NCN has directly collected all of the rents due on the Real Property. On information and belief, NCN has used the rents it collected to pay some of the costs of operating the Real Property but has also applied some of the funds to payment of money due under the Note. Since NCN has been collecting rents and allegedly paying bills associated with the Real Property, the Debtors do not know exactly which bills have been paid to date or how much, if any, money collected by NCN remains in its possession.

8. On December 11, 2009, NCN notified the Debtors that the Real Property was to be sold at a foreclosure sale on January 5, 2010 (the "Foreclosure Sale") if the entire amount due under the Note was not immediately paid. The Debtors have been attempting to sell the Real Property since before they received the Notice of Acceleration from NCN, because they believe the Real Property is worth far more than the debt it secures. The Debtors were not, however, able to consummate a sale prior to the scheduled Foreclosure Sale. Because the Debtors believe that the property is worth substantially more than the balance due to NCN, they sought chapter

11 protection for Amidee-Corpus in order to maximize the value available for distribution to the Amidee-Corpus' creditors and equity holders.

9. Shortly after the Petition Date, Amidee-Corpus entered into a written agreement with a prospective purchaser of the Real Property. The earnest money contract signed by Amidee-Corpus provides for a cash purchase price of $2 million to be paid by the purchaser at closing of the sale which is to occur on or before March 1, 2010. Upon the closing of this sale, less than 60 days from the filing of this Motion, Amidee-Corpus should have more than enough funds available to pay the full amount due to NCN under the Note.

**Amidee-Corpus' Assets and Liabilities**

10. Amidee-Corpus owns one piece of real property, the Atrium, which is a 31,258 sq. ft. Office Building located in Corpus Christi, Texas. The Atrium is in a prime commercial location at South Staples Street and has ample parking and a beautiful two story atrium. Although the Atrium is burdened by approximately $1,262,183 in secured debt held by NCN, the Debtors believe this property is worth in excess of $2 million.

11. NCN has an outstanding loan to Amidee-Corpus with a principal balance of approximately $1,262,183 which is secured by the Atrium, an assignment of rents and leases and any personal property contained therein. To the best of the Debtors' knowledge, the Atrium's personal property is not burdened by liens or security interests other than NCN's lien. Therefore, the Debtors have substantial equity in the Atrium and all personal property located at same.

**The Marketing and Sale of the Atrium**

12. ACG has been marketing the Atrium for more than three months. On January 8, 2010, the Debtors entered into an Earnest Money Contract (the "Sale Agreement") whereby Costal Horizon Investments, LLC (the "Buyer") agreed to purchase the Atrium for a cash price

of $2,000,000. A true and correct copy of the fully executed Sale Agreement is attached to this Motion as **Exhibit A**.

## III.
## TERMS OF THE SALE AGREEMENT

13. The material terms of the Sale Agreement are as follows:

   a. The Atrium will be sold to the Buyer for the purchase price of $2,000,000.

   b. Buyer is required to deposit $5,000 in earnest money with San Jacinto Title (the "Title Company") within three days after execution of the Sale Agreement, and the deposit has in fact been made.

   c. The Buyer's purchase is subject to its ability to obtain conventional financing from a 3rd party lender in a principal amount of $1,600,000. Further, the terms of the loan must provide for interest of no more than 7% per annum over a 20 year term. If Buyer cannot obtain financing meeting these terms within 55 days of the effective date of the Sale Agreement, it is entitled to terminate the agreement and entitled to a return of its earnest money.

   d. Buyer may terminate the contract for any reason within 50 days after the effective date by providing Seller written notice of termination. If Buyer does not terminate within the time required, Buyer accepts the Property in its present "as is" condition. If Buyer terminates within the time required, the earnest money will be refunded to Buyer less $100 that Seller will retain as independent consideration for Buyer's right to terminate.

   e. The closing of the sale will be on or before March 1, 2010.

   f. The Sale Agreement is subject to approval by the Bankruptcy Court and if the Debtors fail to obtain a final order from the Court approving the terms and conditions of the sale within 90 days of the effective date, the Sale Agreement will terminate and all earnest money will be returned to the Buyer.

## IV.
## LEGAL AUTHORITY AND JUSTIFICATION FOR REQUESTED RELIEF

14. By this Motion, the Debtors seek authority to sell the Atrium and respectfully request that the Court enter an order approving the Sale Agreement and authorizing the Debtors to complete the proposed sale in the manner described herein. The Debtors further request that

at closing of the sale the Court authorize the Debtors to apply the sale proceeds to (a) pay the claims of NCN; (b) pay the real and personal property taxes due on the Atrium for 2009 (if any) and pay the prorated portion of the estimated property taxes due for 2010 through the closing as required by the Sale Agreement; and (c) pay the real estate commission due to the Buyer's real estate broker and to ACG.[2]

**Authority to Enter into the Sale Agreement**

15. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease other than in the ordinary course of business, property of the estate." In general, a debtor may use, sell or lease property of the estate outside of the ordinary course of its business where the sale represents an exercise of the debtor's sound business judgment. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) ("there must be some articulated business justification for using, selling or leasing the property outside the ordinary course of business"); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145–47 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the pre-confirmation sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a § 363 sale in a

---

[2] Pursuant to the Sale Agreement, the Buyer and the Seller's real estate brokers are each entitled to be paid 3% of the total sale price as commission on the sale. ACG, acted as the broker on this sale and, by agreement, is entitled to the Seller's broker's 3% commission, as compensation for its efforts in arranging this sale.

chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

**The Sale of the Atrium**

16. The Debtors believe that, for the reasons set forth herein, the proposed sale of the Atrium represents a prudent and proper exercise of their business judgment and is supported by articulated business reasons.

17. Although the Atrium was listed for multiple months, the current offer was the only offer received that was anywhere near a reasonable price in this current down-market. The Buyer is a third-party buyer with whom the Debtors have no prior connection. The consideration to be paid for the Atrium under the terms of the Sale Agreement is fair and reasonable considering the current state of the economy and the sale of the Atrium was negotiated at arms' length. The Debtors expect that after payment of all of the secured claims, taxes, closing costs and broker's fees, they will still retain more than $500,000 in cash that can be used to pay other creditors of the Amidee-Corpus estate.

18. Finally, the Debtors and the Buyer have entered into the Sale Agreement in good faith. Courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are fully disclosed. *See, e.g., In re Abbotts Dairies of Pennsylvania. Inc*., 788 F2d 143, 149-50 (3d Cir. 1988). These conditions apply to the sale of the Atrium pursuant to the Sale Agreement.

**Payment to Secured Lender**

19. The Debtors request that the Court authorize the Debtors to use the proceeds from the sale of the Atrium to pay the secured obligations owed to NCN. At or prior to the date of the hearing on this Motion, the Debtors will provide a list of agreed upon amounts to be paid to

NCN. Once a final amount is agreed upon by Debtors and NCN, all amounts due on the claims will be paid out of the sale proceeds by the title company at closing. Upon payment at the closing, NCN's liens on the Atrium and all other property of Amidee-Corpus' estate will be released.

20. Although the Debtors are not aware of any other secured claims other than those held by NCN, to the extent that any other perfected liens exist, the Debtors seek authority to sell the Atrium free and clear of such liens. The liens, if any, will attach to the applicable proceeds with the same validity and priority as they attached to the Atrium or applicable portion thereof.

21. Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell property "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

> (1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate *v*alue of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

22. Applicable case law provides that a sale of a debtor's assets free and clear of all liens, with such liens attaching to the net proceeds of the sale is permissible under § 363(f). *See Folger*, 209 F.3d at 259 ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of Section 363(f) and, therefore, attaches to the proceeds of the sale."); *In re WPRV-TV, Inc.*, 143 B.R. 315, 321 (D. P.R. 1991); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

23.     Further, with respect to § 363(f), all known lien-holders will receive service of the Motion and will have an opportunity to object.  The Debtors anticipate that any lien-holders will consent or be deemed to consent to the sale of the Atrium given that all liens will either be paid from the sale proceeds or will attach to the net proceeds.  The sale of the Atrium, therefore, will likely satisfy the second element of § 363(f).  *See Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, secured creditor deemed to consent under § 363(f)(2)).

24.     Accordingly, pursuant to § 363(b), the Debtors request authority to sell the Atrium and use the sale proceeds to pay off debts owed to NCN.  Furthermore, the Debtors submit that any other such liens will be adequately protected under § 363(f) by attachment to the net proceeds for sale of the Atrium or applicable portion thereof, subject to any claims and defenses the Debtors may possess with respect thereto.  The sale of the Atrium on the terms and conditions set forth in the Sale Agreement satisfies the requirements of § 363 of the Bankruptcy Code and is in the best interest of the Debtors' estates.

**Payment of Property Taxes**

25.     The Debtors further request authority to pay certain real property taxes related to the Atrium.  Pursuant to the Sale Agreement, all real property taxes will be prorated through the closing date.  The Debtors do not believe that any property taxes are currently owed on the Atrium for 2009 and estimate that the prorated portion of the property taxes due by the seller for 2010 will be approximately $3,192.[3]

26.     Under Texas law, the applicable taxing authorities are granted statutory liens on the property for the total amount of taxes owed.  Tex. Tax Code Ann. § 32.01 (Vernon 2001).  In

---

[3] Assuming a closing on February 28, 2010.  If closing occurs sooner, the amount owed will be reduced.

addition, this tax lien has priority over all liens imposed against the property. *Id*. at § 32.05. The taxes, therefore, are fully secured by liens on the Atrium. In the exercise of its equitable powers under § 105(a) of the Bankruptcy Code, courts have frequently authorized payment of these types of taxes where such payments would benefit the estate. *See, e.g., In re Pillowtex, Inc.*, 2002 WL 32332071 (Bankr. D. Del. 2002) (authorizing the payment of prepetition real property taxes in order to avoid further accrual of interest and penalties).

**Payment of Compensation to Buyer and Seller's Brokers**

27. Finally, the Debtors request authority to compensate ACG as it acted as the Commercial Real Estate Broker and the Buyer's Commercial Real Estate Broker, Grubb & Ellis Coastal Bend, pursuant to the Sale Agreement. As shown on the Sale Agreement, ACG and Grubb & Ellis Coastal Bend are each entitled to a commission of three-percent (3%) of the sales price, which amounts to $60,000 each. The Debtors respectfully submit that the commissions stated above are reasonable and customary for matters of this type and seeks authority to pay these commissions out of the sales proceeds of the Atrium.

WHEREFORE, the Debtors respectfully request that the Court enter an order (I) authorizing and approving the sale of the Atrium; (II) authorizing the Debtors to use the sale proceeds to pay certain claims and expenses associated with the Atrium, and (III) granting such other relief as may be just and proper.

Respectfully submitted this 25th day of January, 2010.

**OKIN ADAMS & KILMER LLP**

By: ‎ /s/ *Sara Mya Patterson*
    Matthew S. Okin (TB# 00784695)
    mokin@oakllp.com
    Sara Mya Patterson (TB# 24062938)
    spatterson@oakllp.com
    1113 Vine St. Suite 201
    Houston, TX  77002
    Tel:  (713) 228-4100
    Fax:  (888) 865-2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

      I hereby certify that true and correct copies of the above Motion, were served upon the parties on the attached service list and to the parties listed below via facsimile, electronic mail or United States Mail, postage prepaid, as indicated, on this 25th day of January, 2010.

NCN Lending LLC (via e-mail)
Thomas J Conwell
P.O. Box 411691
Kansas City, MO 64141-1691
tconwell@usrealtycapital.com

Keith M. Aurzada (via e-mail)
John C. Leininger
BRYAN CAVE LLC
2200 Ross Avenue, Ste. 3300
Dallas, TX 75201
keith.aurzada@bryancave.com

Nueces County Tax Assessor & Collector (via U.S. Mail)
901 Leopard, Room 301
Corpus Christi, TX 78466

Coastal Horizon Investments, LLC (via U.S. Mail)
802 N. Carancahua, Suite 1660
Corpus Christi, TX 78470

                                            */s/ Sara Mya Patterson*
                                            Sara Mya Patterson