IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-20041 |
| | § | |
| AMIDEE CAPITAL GROUP, INC., ET AL., | § | CHAPTER 11 |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

**APPLICATION PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO (A) EMPLOY AND RETAIN LEGC, LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL AND (B) DESIGNATE DOUGLAS J. BRICKLEY AS THE CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS *NUNC PRO TUNC* TO JANUARY 4, 2010**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Amidee Capital Group, Inc. ("ACG" or the "Debtor") on behalf of itself and its affiliates, all debtors and debtors in possession in the above referenced bankruptcy proceedings, filing this Application (the "Application") Pursuant to §§ 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), for Authorization to (a) Employ and Retain LECG, LLC ("LECG") to provide the Debtors a Chief Restructuring Officer and Other

Personnel and (b) to Designate Douglas J. Brickley ("Brickley") as Chief Restructuring Officer for the Debtors *Nunc Pro Tunc* to the Corpus Petition Date and in support hereof, respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtors' Chapter 11 cases and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are §§ 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

3. On January 4, 2010 (the "Corpus Petition Date"), Amidee 2006 Preferred-Corpus, Ltd. ("Amidee Corpus"), a subsidiary of ACG, filed a voluntary petition for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court"). On January 17, 2010 (the "Petition Date"), ACG and nine (9) of its other subsidiaries also filed voluntary petitions for relief under chapter 11 in this Court.[1] The Debtors' bankruptcy cases are collectively referred to as the "Reorganization Cases."

---

[1] The ACG subsidiaries who filed bankruptcy petitions on January 17, 2010, were: Amidee 2004-I Tax Deed and Certificate Investment Program, Ltd. ("Amidee 2004 Tax"); Amidee 2005-II Tax Deed Investment Program, Ltd. ("Amidee 2005 Tax"); Amidee 2006-III Tax Deed and Real Estate Investment Program, Ltd. ("Amidee 2006 Tax"); Amidee 2006 Preferred Real Estate Income Program, Ltd. ("Amidee 2006 Preferred"); Amidee 2006 Commercial Real Estate Income Program, Ltd. ("Amidee 2006 Commercial"); Amidee 2007-I CRE Income Fund, Ltd. ("Amidee 2007"); Amidee 2008-I CRE Income Fund, Ltd. ("Amidee 2008"); Amidee 2009-I CRE Income Fund, Ltd. ("Amidee 2009"); and Amidee Oak Pointe Apartments, LLC ("Amidee Oak Pointe") (collectively with Amidee Corpus, the "Subsidiary Debtors" and with ACG, the "Debtors").

4.  Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors remain in possession of their property and are managing their businesses as debtors in possession. No trustee or examiner has been appointed in the Reorganization Cases.

5.  ACG is a Texas corporation formed in 2003 to acquire, renovate, operate and resell real property in Texas and throughout the United States. Initially, ACG focused its operations on the purchase of tax lien certificates on real property in Houston and the surrounding area. The "tax deed" properties acquired by ACG were purchased using funds raised pursuant to private placements of capital raised by ACG through the sale of limited partnership interests in Subsidiary Debtors—Amidee 2004 Tax, Amidee 2005 Tax and Amidee 2006 Tax. Much of the real property ultimately acquired by ACG using the capital raised for these tax deed programs was either raw land or single family homes.

6.  In 2006, ACG expanded its investment activities beyond raw land and single family homes and began actively looking to acquire and operate apartment complexes and office buildings. To fund these new acquisitions, in 2006, ACG raised additional capital through the sale of limited partnership interests in two additional limited partnerships—Amidee 2006 Preferred and Amidee 2006 Commercial. In 2007, 2008 and 2009, ACG formed an additional limited partnership each year and raised capital through the sale of the limited partnership interests in those entities—Amidee 2007, Amidee 2008 and Amidee 2009.

7.  In the six years from 2004 to 2009, ACG raised approximately $24 million through the sale of limited partnership interests. Combined, approximately 350 different entities or individuals own limited partnership interests in one or more of the Subsidiary Debtors. While

3

the number and identity of the limited partners vary for each of the Subsidiary Debtors, ACG is the sole general partner for each Subsidiary Debtor.[2]

8.      In addition to the Subsidiary Debtors, ACG owns significant stakes in certain non-debtor entities.  Specifically, ACG owns 100% of the outstanding shares of Amidee Hotels & Resorts, Inc., a Texas corporation, that owns and operates the Amidee Hotel Niagara in Niagara Falls, New York and the Parkway Plaza Hotel and Convention Center in Casper, Wyoming.[3]  In addition, ACG is the managing member of the Atrium LLC, a New Mexico limited liability company that owns the Atrium office building in Albuquerque, New Mexico.  While these non-debtor entities are ultimately controlled by ACG and share some of the liquidity issues that triggered the bankruptcy filing of the Debtors, ACG determined that chapter 11 filings for these entities, at this time, would not be beneficial for those entities, their creditors or the properties that they own.  ACG, however, intends to continue to manage these entities and their properties during the course of these Reorganization Cases.

9.      In addition to the funds raised from the sale of limited partnership interests, ACG has in the past obtained funds for the acquisition, renovation and operation of the various properties it and its subsidiaries own through secured loans from various lending institutions and individuals.  As of the Petition Date, ACG or one of the Subsidiary Debtors was the primary borrower on approximately $10.5 million in loans secured by various real property owned by the Debtors.  In addition to these direct obligations of some of the Debtors, some of ACG's non-

---

[2] Amidee Oak Pointe is actually an LLC, and ACG is therefore its sole managing member, rather than general partner.  Amidee Oak Pointe and Amidee Corpus are special purpose entities formed to own a single piece of real property, and therefore third party investors do not own limited partnership interests (or non-managing membership interests) in these entities.  Instead, all of Amidee Corpus' limited partnership interests are owned by Amidee 2008 and all of the non-managing membership interests in Amidee Oak Pointe are owned by Amidee 2007.

[3] Amidee Hotel Niagara is owned by Amidee Hotel Niagara, LLC and Parkway Plaza is owned by Amidee Wyoming, LLC both of which are 100% owned by Amidee Hotels & Resorts, Inc.

debtor subsidiaries are also borrowers on approximately an additional $11.5 million in secured debt.[4]

10.     ACG estimates that the portfolio consisting of the real property owned directly by one of the Debtors is worth approximately $26.5 million. In addition, although the Atrium office building in Albuquerque, New Mexico is owned by the Atrium LLC, a non-debtor, the Debtors own 75% of the membership interests in the Atrium LLC. ACG, the managing member of Atrium LLC, believes that the Atrium building is worth more than $2.8 million after payment of the outstanding secured debt against that property.[5]

11.     All of the apartment complexes and office buildings owned by the Debtors are managed and operated directly by ACG personnel. ACG personnel are responsible for all aspects of the acquisition of properties as well as the marketing and eventual sale of those properties. Because ACG manages all aspects of the Subsidiary Debtors' operations, none of the Subsidiary Debtors has its own employees. Up until September 2009, ACG maintained a staff of approximately 30 employees and contract personnel to run the operations of ACG and all of its subsidiaries, including the Subsidiary Debtors. In an effort to reduce its overhead, in September 2009, ACG significantly reduced its staff by eliminating all personnel except those essential to keeping the properties operating. As of the Petition Date, ACG had 9 full time employees, and 6 contract workers.[6]

12.     During the five years from 2004 to 2009, ACG successfully managed the real estate portfolio that it and its subsidiaries had acquired. In addition to servicing the secured debt

---

[4] ACG is a guarantor of approximately $9.6 million of this amount which was borrowed by Amidee Hotels & Resorts.

[5] Atrium LLC is the borrower and none of the Debtors has guaranteed this loan, thus it is not an obligation of the Debtors' bankruptcy estates.

[6] James T. Cook and Judith B. Cook, ACG's CEO and President, respectively, are not included in these employment numbers as they have voluntarily gone without salary since September 2009.

incurred in the acquisition and renovation of numerous properties, ACG made in excess of $7 million in interest payments and distributions to the numerous investors in the various real estate entities it manages. By mid-2009, however, a number of factors, including the overall downturn in the United States' economy and the real estate market in particular, contributed to making ACG's cash flow extremely tight. ACG and its subsidiaries began having difficulty paying ongoing operating expenses and servicing their secured debt while still making fixed distributions to limited partners in the Subsidiary Debtors. In September 2009, ACG informed the limited partners in the Subsidiary Debtors that it was suspending regular partner distributions until it could get its cash flow difficulties under control.

13. Unfortunately, the 4th quarter of 2009 did not bring improvement in the Debtors' cash flow situation. Although ACG actively marketed most of the Debtors' real estate portfolio, it was unable to locate buyers for the properties at acceptable prices. In December 2009, ACG retained Douglas J. Brickley of LECG, LLC to advise it with regard to possible restructuring options for ACG and its subsidiaries and help the Debtors to manage their worsening liquidity crisis.

14. On January 4, 2010, ACG determined that filing a bankruptcy petition for Amidee Corpus was necessary in order to prevent foreclosure the next day on the Atrium office building in Corpus Christi, Texas. ACG has since reached agreement with a buyer for the property for an amount in excess of the secured lender's debt. Although the bankruptcy of Amidee Corpus and subsequent sale contract helped to avoid the immediate emergency that triggered the initial bankruptcy filing, ACG determined that no long-term solution to its liquidity crisis was likely without an opportunity to restructure the Debtors through a chapter 11 bankruptcy process. Thus, on January 16, 2010, ACG's board of directors authorized chapter 11 filings for the

Debtors and appointed Brickley as the Chief Restructuring Officer for ACG and the Subsidiary Debtors.  Pursuant to the Board's Resolution, Brickley has been given exclusive control of the Debtors' operations in bankruptcy and the restructuring effort.  ACG believes that the bankruptcy filings and the experienced leadership of Brickley will provide the Debtors with the best chance of reorganizing their operations and paying the greatest possible return to the Debtors' creditors and equity security holders.

## RELIEF REQUESTED

15.     The Debtors request, pursuant to §§ 105(a) and 363(b) of the Bankruptcy Code, authorization to (i) employ and retain LECG to provide the Debtors with a Chief Restructuring Officer ("CRO") and other support personnel, and (ii) designate Brickley as the CRO, effective, *nunc pro tunc*, as of the Corpus Petition Date, in accordance with the fee structure described below and pursuant to the terms and conditions of that certain engagement letter agreement between LECG and ACG dated December 22, 2009 (the "Engagement Agreement").[7]

## BASIS FOR RELIEF REQUESTED

16.     The Debtors seek approval of the employment of LECG and designation of Brickley as CRO pursuant to § 363 of the Bankruptcy Code, *nunc pro tunc* to the Corpus Petition Date.  Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Further, pursuant to § 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary to carry out the provisions of this title."  11 U.S.C. § 105(a).

---

[7] Any statements contained herein concerning the terms and conditions of the Engagement Agreement are qualified by reference to the Engagement Agreement.  In the event of a conflict between this Application and the Engagement Agreement, the Engagement Agreement shall control.

17. Under applicable case law, if a debtor's proposed use of its assets pursuant to § 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g. Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring an "articulated business justification"); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, the court defers to the trustee's judgment so long as there is a "legitimate business justification"); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to § 363 (b)). Courts have applied § 363(b) when a debtor employs one or more individuals to serve as restructuring officers or managers. *See In re Tokheim Corp.*, Case No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003).

18. The retention of interim corporate officers and financial advisors, therefore, is proper under § 363. Courts in this district and other courts have authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions. *See e.g., In re Pilgrims' Pride Corp.*, Case No. 08-45664 (DML) (Bankr. N.D. Tex. Dec. 30, 2008) (Docket Entry on Dec. 30, 2008); *In re Mirant Corp., et al.*, Case No. 03-46590 (DML) (Bankr. N.D. Tex. [Sept. 26, 2003]) [Docket No. 999]; *In re PRC, LLC*, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008) [Docket No. 182]; *In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 1, 2007) [Docket No. 72]; *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar.6, 2006) [Docket No. 84]; *In re Penn Traffic Co.*, Case No. 03-22945 (ASH) (Bankr. S.D.N.Y. May 30, 2003) [Docket No. 31]; *In re Acterna Corp.*, Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. May 6, 2003 [Docket No. 44].

19. Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and therefore, should be granted in these Reorganization Cases.

## QUALIFICATIONS OF PROFESSIONALS

20. The Debtors engaged LECG on December 22, 2009 to provide the Debtors with the financial advisory services of Brickley and support personnel. Prior to the Corpus Petition Date, the Debtors chose to appoint Brickley as the Debtors' CRO because Brickley has substantial expertise and experience in the operation, sale and restructuring of troubled companies. As a result, the Debtors believe that LECG and Brickley are well qualified to perform these services and represent the Debtors' interests in these Reorganization Cases.

21. Brickley has over seventeen years of financial and executive management experience. He has substantial experience working with distressed companies in different capacities both in and out of bankruptcy. He has served as financial advisor, investment banker, liquidating trustee, trustee, receiver, and chapter 7 and 11 trustee to companies in a wide variety of fields including real estate. He holds an M.B.A. from Baylor University School of Business and a bachelor's degree from Texas A&M University.

## DISINTERESTEDNESS OF PROFESSIONALS

22. The Debtors submit that the retention of LECG is not governed by § 327 of the Bankruptcy Code; however, out of an abundance of caution and for the Court's benefit the Debtors attach hereto and incorporate herein the Brickley Affidavit as **Exhibit 1**. To the best of the Debtors' knowledge, LECG and Brickley are not creditors or insiders of the Debtors, nor do they have any direct or indirect relationship to, connection with, or interest in the Debtors that would make their interests materially adverse to the interests of the estates or of any class of

9

creditors or equity security holders. Except as set forth in the Brickley Affidavit, to the best of the Debtors' knowledge, LECG and Brickley do not have any connections with the Debtors, their creditors any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. Based upon the Brickley Affidavit, the Debtors believe that LECG and Brickley are "disinterested persons" as that term is defined in § 101(14) of the Bankruptcy Code, as modified by § 1107(b) and is therefore qualified to be employed by the Debtors pursuant to §§ 327(a) and 330(a) of the Bankruptcy Code.

## SCOPE OF SERVICES TO BE PROVIDED

23. The parties have entered into an Engagement Agreement which governs the relationship between LECG and the Debtors. The terms and conditions of the Engagement agreement were negotiated, and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Agreement, Brickley, through LECG, will provide the debtors with certain financial advisory and managerial services as the Debtors' Chief Restructuring Officer and LECG will provide additional personnel to assist Brickley in providing financial advisory services to the Debtors.

24. It is necessary that the Debtors employ Brickley as their Chief Restructuring Officer. The Debtors believe that Brickley's services will not duplicate the services that other professionals will be providing the Debtors in the Reorganization Cases. Specifically, Brickley will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and other professionals retained in these cases to avoid the unnecessary duplication of services. In order to support Brickley in the services he is providing to the Debtors, it is also necessary for the Debtors to employ LECG to provide additional support personnel to assist Brickley in

conducting financial analysis, evaluations, and optimizing operations, among other activities in these Reorganization Cases.

## PROFESSIONAL COMPENSATION

25.     As set forth in the Engagement Agreement, the Debtors and LECG agreed to the following terms of compensation:

   a.  <u>Fixed Monthly Fee</u>:  LECG shall be paid a fixed monthly fee of $25, 000 on the 15th of each month until the termination of the engagement.

   b.  <u>Expenses</u>:  In addition to the fixed monthly fee payable to LECG, the Debtors shall reimburse LECG for all out-of-pocket expenses such as travel expenses, messenger and delivery services, photocopying, long distance telephone and similar items.  To the extent that an outside vendor is used, LECG will be entitled to reimbursement of its actual costs paid to such outsider vendor.

   c.  <u>Additional Fees</u>:  LECG shall be entitled to success fees including: (i) a Debt Restructuring Fee of 5% of the indebtedness, including outstanding principal and accrued interest, of the Debtors that is restructured; (ii) A Transaction Fee equal to 5% of the transaction value for any assets sold in an M&A transaction; and (iii) if the transaction includes both a Debt restructuring and a M&A transaction LECG is entitled to a Combination Fee equal to the sum of (a) the applicable Debt Restructuring Fee and (b) the applicable Transaction Fee.  However, if the same assets are involved in both a debt restructuring and M&A transaction, LECG is only entitled to a single fee consisting of the greater of the applicable Debt Restructuring Fee or the applicable Transaction Fee.

26.     The compensation structure described in the Engagement Agreement is reasonable and comparable to those generally charged by Chief Restructuring Officers of similar stature to Brickley.  The Debtors believe that the flat monthly fee being charged for Brickley and other LECG personnel's services is substantially below the average cost of employing similar personnel on an hourly basis.  Further, since the success fees will not be earned unless the Debtors are able to sell assets or restructure debt in these Reorganization Cases, the estate benefits by obtaining a below market cost for monthly services and only pays additional fees if value is ultimately created through Brickley and LECG's services.

27. Pursuant to the Debtors' request and due to exigent circumstances, LECG and Brickley commenced this engagement immediately and with assurances that the Debtors would seek approval of its employment *nunc pro tunc* to January 4, 2010.

28. Based upon the foregoing, the Debtors submit that cause exists to authorize the retention of LECG and Brickley *nunc pro tunc* to January 4, 2010.

29. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully requests that the Court enter an Order, substantially in the form attached hereto: (i) granting this Application; (ii) authorizing the Debtors to retain and employ LECG to provide the services of Brickley and various support personnel and to retain Brickley as their Chief Restructuring Officer to perform the services set forth herein; and (iii) granting such other and further relief as is just and proper.

Respectfully submitted on the 3rd day of February, 2010.

**OKIN ADAMS & KILMER LLP**

By: ____/s/ *Sara Mya Patterson*____
Matthew S. Okin (TB# 00784695)
mokin@oakllp.com
Sara Mya Patterson (TB# 24062938)
spatterson@oakllp.com
1113 Vine St. Suite 201
Houston, TX  77002
Tel:  (713) 228-4100
Fax:  (888) 865-2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the forgoing Application was served upon the parties on the attached service list via United States Mail, postage prepaid, or via e-mail as indicated, on the 3rd day of February, 2010.

                                         */s/ Sara Mya Patterson*
                                         Sara Mya Patterson

**Shortened Service List**
**Amidee Capital Group Inc.**
**Case No. 10-20041**
**Jointly Administered**

United States Trustee's Office
606 N. Carancahua Street, Suite 1107
Corpus Christi, TX 78476

NCN Lending LLC
Thomas J Conwell
P.O. Box 411691
Kansas City, MO 64141-1691
tconwell@usrealtycapital.com

Danny W. Looney, P.C.
3838 Oak Lawn Ave., Ste. 910
Dallas, TX 75219

Fidelity National Property Ins.
801 94th Avenue N., Ste. 110
St. Petersburg, FL 33702

Parkwood of Northchase
14420 W. Sylvanfield
Houston, TX 77014

The Hartford
P.O. Box 2907
Hartford, CT 06104-2907

City of Houston
P.O. Box 1560
Houston, TX 77521

Nueces County Tax Assessor & Collector
901 Leopard, Room 301
Corpus Christi, TX 78401

Criterion Brock
P.O. Box 800273
Houston, TX 77280-0273

Amidee Capital Group, Inc.
14420 W. Sylvanfield, Ste. 100
Houston, TX 77014

Lone Star Bank
Mathew Melvin
Asst Vice President
952 Echo Lane, Suite 100
Houston, TX 77024
MMelvin@LSBTexas.com

Keith M. Aurzada
John C. Leininger
BRYAN CAVE LLC
2200 Ross Avenue, Ste. 3300
Dallas, TX 75201
keith.aurzada@bryancave.com
John.leininger@bryancave.com

First Access Capital Corp
34601 E. Shores Rd.
Lone Jack, MO 64070

Elizabeth Parker
Dba All Bright Janitorial
03 Phillips Drive
Los Lunas, NM 87031

Pasadena ISD
P.O. Box 1318
Pasadena, TX 77501-1318

Maintenance Supply
P.O. Box 203601
Houston, TX 77216-3601

Bank of America
P.O. Box 15710
Wilmington, DE 19886-5710

Texas City ISD-Tax Office
Tax Assessor-Collector
P.O. Box 1150
Texas City, TX 77592

StarTex Power
P.O. Box 4802
Houston, TX 77210

Matthew S. Okin
Sara Mya Patterson
1113 Vine Street, Suite 201
Houston, Texas 77002
spatterson@oakllp.com

National Guardian Life Insurance Co
Robert A Mucci
Two East Gilman St
Madison, WI 53703
ramucci@nglic.com
McNeidinger@nglic.com
mjdrew@nglic.com

Sterling Bank
John Murphy
Commercial Lending Group
2401 Fountainview, Suite 100
Houston, TX 77057
john.murphy@banksterling.com

Leo Vasquez
Tax Assessor-Collector
P.O. Box 4663
Houston, TX 77210-4663

Sherrie Malone
3103 Lakes of Katy Lane
Katy, TX 77493

Aicco, Inc.
P.O. Box 200455
Dallas, TX 75320

Dell Commercial Credit
P.O. Box 689020
Des Moines, IA 50368

Dell Commercial Credit
P.O. Box 689020
Des Moines, IA 50368

US Bank Office Equipment
1310 Madrid St., Ste. 101
Marshall, MN 56258

IRS-Corpus Christi
STOP #5026AUS
300 E. 8th Street
Austin, TX 78701

Ted L. Walker
Adam R. Fracht
THE WALKER FIRM
402 Main Street, 9th Floor
Houston, TX 77002
tlwalkerlaw@aol.com

Charles R. Sterbach
Assistant United States Trustee
Office of the United States Trustee
606 N. Carancahua, Suite 1107
Corpus Christi, TX 78476
Charles.R.Sterbach@usdoj.gov

Pasadena ISD
Dexter D. Joyner
4701 Preston Ave.
Pasadena, texas 77505
Fax: 281-991-6201

Joseph G. Epstein
WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
jepstein@winstead.com

Ronald A. Simank
Schauer & Simank, P.C.
615 North Upper Broadway, Suite 2000-MSC 159
Corpus Christi, Texas 78477
rsimank@cctxlaw.com

Darla C. Carlisle
Weycer, Kaplan, Pulaski & Zuber, P.C.
11 Greenway Plaza, Suite 1400
Houston, Texas 77046
dcarlisle@wkpz.com

Patrick L. Hughes
Haynes and Boone LLP
1221 McKinney, Suite 2100
Houston TX 77010
Facsimile No.: 713-547-2600
patrick.hughes@haynesboone.com