IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-20041-C-11 |
| | § | |
| AMIDEE CAPITAL GROUP, INC., | § | CHAPTER 11 |
| ET AL., | § | |
| | § | (Jointly Administered) |
| DEBTORS. | § | |

**STERLING BANK'S OBJECTION TO THE DEBTORS' APPLICATION PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO (A) EMPLOY AND RETAIN LECG, LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND ADDITIONAL PERSONNEL AND (B) DESIGNATE DOUGLAS J. BRICKLEY AS THE CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS *NUNC PRO TUNC* TO JANUARY 4, 2010**
[This instrument relates to Docket No. 44]

TO THE HONORABLE RICHARD S. SCHMIDT, U.S. BANKRUPTCY JUDGE:

Sterling Bank ("Sterling"), a secured creditor of Amidee Capital Group, Inc., et al. (the "Debtors") in these bankruptcy cases, files this Objection (the "Objection") to the Debtors' Application Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for Authorization to (A) Employ and Retain LECG, LLC to Provide the Debtors a Chief Restructuring Officer and Additional Personnel and (B) Designate Douglas J. Brickley as the Chief Restructuring Officer for the Debtors *Nunc Pro Tunc* to January 4, 2010 (the "Application").

**OVERVIEW OF OBJECTION**

The proposed engagement fails to adequately address how the fees will be split between and among the Debtor and non-Debtor entities. In addition, the proposed success fees appear duplicative and incompatible with the sale of the Debtors' properties and the skill set provided by LECG.

## **RULE 8 RESPONSES**

1. Paragraphs one and two contain assertions of the Court's jurisdiction and the predicates for the relief requested to which no response is required.

2. Sterling admits the allegations in paragraphs three and four.

3. Sterling lacks information or knowledge to admit or deny the allegations in paragraphs five through 14.

4. Paragraph 15 contains allegations of the relief requested to which no response is required.

5. Paragraphs 16 through 18 are statements of the law to which no response is required.

6. Sterling denies the allegations in paragraph 19.

7. Sterling admits the allegations in paragraphs 20 through 22.

8. Sterling lacks information or knowledge to admit or deny the allegations in paragraph 23.

9. Sterling denies the allegations in paragraph 24.

10. Paragraph 25 sets forth a summary of the proposed engagement terms which speak for themselves.

11. Sterling denies the allegations in paragraph 26.

12. Sterling lacks information or knowledge to admit or deny the allegations in paragraph 27.

13. Sterling denies the allegations in paragraph 28.

14. Sterling admits the allegations in paragraph 29.

**OBJECTION**

15. The proposed fee structure to pay LECG flat monthly fees and success fees in the form of Debt Restructure Fees and Transaction Fees raises many questions as to the purpose of the reorganization and which entities (or parties) are receiving benefits from the proposed services. It appears that LECG has supplanted the Debtors' pre-petition management, and with the exception of one key employee and one assistant, LECG is managing both the Amidee Debtor and non-Debtor businesses. The Application attaches the engagement letter which is between Amidee Capital Group, Inc. ("ACG") (one of the Debtors in these cases) and a non-Debtor, Amidee Hotels & Resorts, Inc. Sterling objects to the Application insofar as the Debtors fail to set forth how the shared management services will be accounted for and how payment will be apportioned among the respective Debtor and non-Debtor entities which are receiving the benefits of LECG's services.

16. Sterling further objects to the troubling fact that the flat fee will be borne by the Debtors' estates (and more precisely secured creditors like Sterling), including entities that own assets requiring little in the way of management as the entities hold raw land or apartment projects that require little more than the onsite property personnel. These cases appear headed for sales of the respective properties and should not require substantial monthly management fees beyond the approximate three percent (3%) fees paid by the respective estates to the general partner and/or managing member, ACG. Based on the Debtors' representations at the first day hearings in these cases that the reorganization of these entities is for the benefit of limited partner investors or members of the respective co-Debtor entities, or bondholders of the general partner, the limited partners and members or bondholders should be presented with capital calls to cover LECG's expenses for Corporate Overhead restructuring.

17. The Application includes success fees for LECG in the amount of five percent (5%) of the value of the restructured indebtedness <u>and</u> five percent (5%) of the value of any assets sold in an M&A transaction, as well as potential payment of both in certain circumstances. Sterling submits that the overlapping Debt Restructuring Fees and Transaction Fees potentially duplicate fees that will likely be paid to third party real estate brokers that are engaged to sell the Debtors' properties. LECG's expertise rests in management and turnaround services, not real estate brokerage. Compensating LECG with a five percent (5%) Transaction Fee on top of a six percent (6%) commission paid to real estate brokers means the estates will pay an eleven percent (11%) transaction fee for selling real estate. This amount far exceeds a reasonable fee for the disposition of the apartment projects and raw land that constitutes Sterling's collateral.

18. The fee arrangement proposed in the Application does not expressly prohibit or even account for this possibility. LECG's receiving a Transaction Fee when a third party broker effectuates a sale (whether the sale is from a traditional earnest money contract or from a transaction pursuant to § 363 of the Bankruptcy Code) should not be approved.

19. Given the foregoing, the fee arrangement and the Application fall short of the "good business judgment" test courts have used to approve similar applications pursuant to 11 U.S.C. § 363(b)(1), as requested in the Application. *See, e.g.*, *In re Condere Corp.*, 228 B.R. 615, 628-30 (Bankr. S.D. Miss. 1998) (explaining the use of the "business judgment test" as it applies to considering a debtor's motion for authority to act pursuant to § 363(b) of the Bankruptcy Code). Given the objectionable features of the fee arrangement, the Application cannot be characterized as "fair and equitable" or "in the best interest of the estate" as required under § 363(b). *See, e.g.*, *WBQ P'ship v. Va. Dep't of Med. Assistance Servs.* (*In re WBQ P'ship*), 189

B.R. 97, 105-06 (Bankr. E.D. Va. 1995); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).

## **PRAYER**

Sterling requests that the Court grant this Objection, deny the relief requested in the Debtors' Application, and grant such other and further relief as this Court deems just and proper, both at law and in equity.

**DATED: February 19, 2010**

Respectfully submitted,

WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)

By:  */s/ Joseph G. Epstein*
         Joseph G. Epstein
         State Bar No. 06639320
         S.D. Tex. No. 11733
         Sean B. Davis
         State Bar No. 24069583
         S.D. Tex. No. 1048341

**ATTORNEYS FOR STERLING BANK**

**Certificate of Service**

      I hereby certify that on February 19, 2010, the foregoing Objection was served via first class U.S. Mail to the parties listed on the attached service list. Additionally, notice of this document will be electronically mailed to the parties registered or otherwise entitled to receive electronic notices in these cases pursuant to the Electronic Filing Procedures in this District.

                                                                                         */s/ Joseph G. Epstein*
                                                                                            One of Counsel

OKIN ADAMS & KILMER LLP
Matthew S. Okin
Sara M. Patterson
1113 Vine Street, Suite 201
Houston, Texas 77002
(888) 865-2118 (Facsimile)


U.S. Trustee
606 N. Carancahua
Corpus Christi, Texas 78476