IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-20041 |
| | § | |
| AMIDEE CAPITAL GROUP, INC., ET AL., | § | CHAPTER 11 |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

**DEBTORS' MOTION TO STRIKE AND RESPONSE TO JOINT MOTION OF LONE STAR BANK AND STERLING BANK TO DISMISS BANKRUPTCY CASES PURSUANT TO 11 U.S.C. § 1112(b), OR IN THE ALTERNATIVE, APPOINT CHAPTER 11 BANKRUPTCY TRUSTEES PURSUANT TO 11 U.S.C. § 1104(a) TO LIQUIDATE PARTNERSHIP ESTATES**
(Relates to Doc. #115)

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Amidee Capital Group, Inc. ("ACG" or the "Debtor") on behalf of itself and its affiliates, all debtors and debtors in possession in the above referenced bankruptcy proceedings, filing this Motion to Strike and Response to Joint Motion of Lone Star Bank and Sterling Bank to Dismiss Bankruptcy Cases Pursuant to 11 U.S.C. § 1112(b), or in the Alternative, Appoint Chapter 11 Trustees Pursuant to 11 U.S.C. § 1104(a) to Liquidate Partnership Estates, and in support hereof, respectfully state as follows:

## I.
## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## BACKGROUND

2. On January 4, 2010 (the "Corpus Petition Date"), Amidee 2006 Preferred-Corpus, Ltd. ("Amidee Corpus"), a subsidiary of ACG, filed a voluntary petition for relief under chapter

11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court").  On January 17, 2010 (the "Petition Date"), ACG and nine of its other subsidiaries also filed voluntary petitions for relief under chapter 11 in this Court.[1]  On January 21, 2010, the Court approved an order directing that all of the Debtors' cases be jointly administered under case no. 10-20041.  The Debtors' bankruptcy cases are collectively referred to as the "Reorganization Cases."

3. On February 26, 2010, the Court entered an order authorizing the Debtors' retention of Douglas Brickley as the Chief Restructuring Officer (the "CRO") of each of the Debtors in these Reorganization Cases and approving of the terms of the CRO's retention pursuant to his prepetition engagement agreement with the Debtors.

4. Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors remain in possession of their property and are managing their businesses as debtors in possession.  No trustee or examiner has been appointed in the Reorganization Cases.

5. On March 4, 2010, Lone Star Bank and Sterling Bank (collectively, "Movants") filed a Joint Motion of Lone Star Bank and Sterling Bank to Dismiss Bankruptcy Cases Pursuant to 11 U.S.C. § 1112(b), or in the Alternative, Appoint Chapter 11 Trustees Pursuant to 11 U.S.C. § 1104(a) to Liquidate Partnership Estates [Doc. #115] ("Motion").

### III.
### MOTION TO STRIKE

6. Movants lack the proper standing to seek the relief requested in their Motion and

---

[1] The ACG subsidiaries who filed bankruptcy petitions on January 17, 2010, were: Amidee 2004-I Tax Deed and Certificate Investment Program, Ltd. ("Amidee 2004 Tax"); Amidee 2005-II Tax Deed Investment Program, Ltd. ("Amidee 2005 Tax"); Amidee 2006-III Tax Deed and Real Estate Investment Program, Ltd. ("Amidee 2006 Tax"); Amidee 2006 Preferred Real Estate Income Program, Ltd. ("Amidee 2006 Preferred"); Amidee 2006 Commercial Real Estate Income Program, Ltd. ("Amidee 2006 Commercial"); Amidee 2007-I CRE Income Fund, Ltd. ("Amidee 2007"); Amidee 2008-I CRE Income Fund, Ltd. ("Amidee 2008"); Amidee 2009-I CRE Income Fund, Ltd. ("Amidee 2009"); and Amidee Oak Pointe Apartments, LLC ("Amidee Oak Pointe") (collectively with Amidee Corpus, the "Subsidiary Debtors" and with ACG, the "Debtors").

the Court should, therefore, strike the Motion. Only the holder of an equity interest in the specific debtor in question is a proper party in interest for purposes of seeking to dismiss that debtor's case for lack of corporate authority. *See In re Hawaii Times Ltd.*, 53 B.R. 560, 561 (Bankr. D. Haw. 1985); and *In re Southwest Equipment Rental*, 152 B.R. 207, 208 (Bankr. E.D. Tenn. 1992). Movants are not holders of any of the equity in the Debtors and are in fact only secured creditors of *some* of the Debtors in these Reorganization Cases.[2]

7. Movants allege that because ACG was the first Debtor to file chapter 11, it withdrew as general partner of Debtors and therefore lacked authority to file the remaining Reorganization Cases.[3] *See* Motion to Dismiss at ¶ 7. Although, as discussed below, this argument is without merit, the Court should not even consider the Motion, because Movants lack the standing to bring it. Courts limit the standing of creditors to raise the issue of authorization to file a bankruptcy petition, because they recognize that creditors' motivations in seeking dismissal of a case are not aligned with the interests of the parties potentially harmed by an unauthorized bankruptcy filing—equity. *See In re Southwest Equipment Rental*, 152 B.R. 207, 209–10 (Bankr. E.D. Tenn. 1992) ("Creditors are not trying to protect the rights of shareholders or other creditors. They don't care.").

8. In fact, the present Motion appears to be nothing more than a transparent attempt by the Movants to gain leverage over the Debtors and ultimately obtain the Debtors' equity in their assets for the Movants. If the Motion has not been brought to gain unfair advantage over the Debtors, the unsecured creditors and the Debtors' limited partners, then what other possible

---

[2] Lone Star Bank is a creditor of only Amidee 2008. Sterling Bank is a creditor of only Amidee 2006 Commercial, Amidee 2007, Amidee Oak Pointe and ACG. Thus, neither Movant is even a creditor of 6 of the 11 Debtors.

[3] The Motion is founded upon language in specific limited partnership agreements and state limited partnership law, but ignores the fact that one of the Debtors, Amidee Corpus, filed its petition 2 weeks before ACG filed bankruptcy and the stated arguments therefore do not apply. It further ignores the fact that 2 Debtors, ACG and Amidee Oak Pointe, are not even limited partnerships and thus in their cases, the argument makes absolutely no sense.

3

motivation for seeking the dismissal of these Reorganization Cases would a secured lender such as Lone Star Bank have for bringing the Motion?  In fact, Lone Star's motivations are clear, especially when one considers that Lone Star is over-secured[4] and has been receiving full payment of the principal and interest on its prepetition debt both before and after the Petition Date.

9. Section 1112(b) of the Bankruptcy Code allows "parties in interest" to bring a motion to dismiss.  *See* 11 U.S.C. § 1112(b).  In determining "party in interest" standing, however, courts should be cautious, because "overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization."  *In re E.S. Bankest*, 321 B.R. 590, 595 (Bankr. S.D. Fla. 2005).

10. In *Bankest*, the defendant in a post-petition adversary proceeding brought a motion to convert the case, or in the alternative, to appoint a trustee or examiner.  *See Bankest*, 321 B.R. at 592.  In response, a representative of the bankruptcy estate brought a motion to strike, arguing that the defendant lacked standing.  *See id*.  The court granted the motion to strike, finding that the defendant lacked party in interest standing to prosecute the motion.  *See id*.  The court emphasized that the defendant did not care about the economic interests of other creditors of the estate and that he was not in a position to assert other parties' interests or rights.  *See id*. at 598–99; *see also In re Gucci,* 174 B.R. 401, 412 (Bankr. S.D.N.Y. 1994) ("in determining whether a creditor has standing to seek a dismissal, the court should consider whether the party raising the challenge has a stake in the case sufficient to entitle it to be heard,

---

[4] Lone Star Bank has admitted on numerous occasions that it is over-secured.  See Lone Star Bank's Response and Objection to Debtor's Motion to Authorize Use of Cash Collateral [Doc #57] at ¶12 ("[Amidee 2008] owns the property known as Harbour Glen Apartments, in which ***it has substantial equity*** . . . .") (emphasis added).

4

taking into account the policies underlying the principles it invokes and the scope of protections intended to be afforded by those policies").

11. "Limits on standing are vital in bankruptcy, where clouds of persons indirectly affected by the acts and entitlements of others may buzz about, delaying final resolution of cases." *In re Deist Forest Products, Inc.*, 850 F.2d 340, 341 (7th Cir. 1988). "Lax rules, on the other hand, which liberally allow anyone with some interest in the proceeding to object to a proposed course of action, tend to needlessly generate protracted litigation." *In re Richman*, 104 F.3d 605, 609 (4th Cir. 1997). Indeed, courts have questioned the standing of a creditor who would benefit from dismissal to challenge the validity of the petition. *See In re Hawaii Times Ltd.*, 53 B.R. 560, 561 (Bankr. D. Haw. 1985); *see also In re Gucci*, 174 B.R. at 412 ("generally, a creditor may not challenge a corporate filing on the ground that it was not properly authorized").

12. For example, in *Southwest Equipment Rental*, the Trustee brought an adversary proceeding to recover preferential transfers. *See* 152 B.R. at 208. The defendants moved to dismiss, contending that the bankruptcy case must be dismissed because the debtor's voluntary petition was not properly authorized by its board of directors. *See id*. In denying the motion to dismiss, the court emphasized that all of the defendants' arguments concerned the "internal governance of the corporation." *Id*. The defendants were not shareholders of the debtor; they were "merely creditors." *Id*. The court explained:

> Even if action of directors authorizing the filing of a voluntary petition . . . were in excess of the authority conferred, or otherwise invalid, creditors could not for that reason attack the consequent adjudication. The question is purely one of the internal management of the corporation. Creditors have no standing to plead statutory requirements not intended for their protection. If the stockholders' rights had been infringed, and they chose to waive them, a creditor could not assert them in opposing an adjudication.

5

*Id.* (citing *Royal Indemnity Co. v. American Bond & Mortgage Co.*, 289 U.S. 165, 171 (1933)). The Supreme Court in *Royal Indemnity* held that a creditor did not have standing to challenge the authorization of the filing of a bankruptcy petition because the statutes relied upon by the creditor were intended for the protection of stockholders and had nothing to do with the interests or rights of creditors. *See Royal Indemnity*, 289 U.S. at 171. The court in *Southwest Equipment Rental* explained that there was an underlying practical reason for the Supreme Court's decision in *Royal Indemnity*: "[a] creditor usually does not move for dismissal of a bankruptcy case out of concern for the debtor or other creditors . . . . Creditors are not trying to protect the rights of shareholders or other creditors. They don't care." *See Southwest Equipment Rental*, 152 B.R. at 209–10.

13. Similar reasoning may be utilized when analyzing a motion to dismiss in the context of a partnership. For example, in the Sixth Circuit case of *In re Ives*, a creditor attempted to have the bankruptcy case of a partnership dismissed because the partnership's general partner was mentally incompetent when he supposedly consented to the bankruptcy. *See* 113 F. 911 (6th Cir. 1902). The court held that the creditor did not have standing to object to the voluntary petition on that ground. *See id.* at 913. The court reasoned that it was up to the partner to challenge the bankruptcy filing, not a creditor. *See id.*

14. Here, it is quite clear that the Movants are mere creditors of the Debtors, and they have filed the Motion to Dismiss with their own interests in mind. The Movants would obviously prefer these bankruptcy cases to be dismissed so they can foreclose on their collateral to the detriment of all other creditors and parties in interest in these bankruptcy cases.

15. Furthermore, the Movants are simply not the parties intended to be protected by the Texas statutes on which they rely. Just as in *Southwest Equipment Rental*, the issue here

deals with the internal governance of the Debtors. Movants have no standing to challenge the filing of these bankruptcy cases based upon such internal governance issues. The limited partners are the parties with standing to challenge the general partner's authority to file the bankruptcy petitions, and their continued silence in this case indicates their acquiescence in the filings. *See, e.g., In re Dearborn Process Service, Inc.*, 149 B.R. 872, 878–79 ("[e]ven if proper corporate governance had not been followed, that defect can be cured here by subsequent ratification or acquiescence by the directors"). In fact, in *Phillips*, the case most heavily relied upon by Movants, it was the limited partner who challenged the general partner's authority to file the bankruptcy petition, ***not a creditor***. *See In re Phillips*, 966 F.2d 926, 928 (5th Cir. 1992).

16. Lastly, it is clear that Movants' argument that a Trustee should be appointed if the cases are not dismissed involves the same internal management issues as those implicated with the argument regarding dismissal. Movants alternatively request that a Chapter 11 Trustee be appointed pursuant to § 1104(a)(3) of the Bankruptcy Code if the Court finds dismissal to be inappropriate. *See* Motion to Dismiss at ¶ 15. Section 1104(a)(3) provides, however, that the court shall order the appointment of a trustee ***if grounds exist to dismiss the case under § 1112***, but the court determines that the appointment of a trustee is in the best interests of creditors and the estate. *See* 11 U.S.C. § 1104(a)(3).

17. Not only are there absolutely no grounds for dismissal of these cases, as discussed below, but, most importantly, Movants have no standing to even make such an argument. Section 1104(a)(3) is therefore inapplicable in this case, and Movants also have no standing to assert that a Trustee should be appointed based upon that section of the Bankruptcy Code. Moreover, the appointment of a trustee is not in the best interests of creditors and the Debtors' estates. There are a total of eleven Debtors in these Reorganization Cases. The appointment of

eleven different chapter 11 trustees and the employment of their respective counsel would drain the resources of the Debtors and significantly impede the Debtors from efficiently operating in bankruptcy. This is not the proper course of action to take at this stage of the case and clearly is not in the best interests of the unsecured creditors, the limited partners or the Debtors' estates. For all of the foregoing reasons, the Motion should therefore be stricken.

## IV.
## RESPONSE

18. Although it is quite clear that Movants lack proper standing to file the Motion, there are nonetheless numerous reasons why this Court should deny the Motion if it finds that Movants do in fact have standing.

19. As stated above, Movants allege that because ACG was the first Debtor to file chapter 11, it withdrew as general partner of the Debtors and therefore lacked authority to file the remaining Reorganization Cases. *See* Motion at ¶ 7. According to Movants, ACG's withdrawal effected a dissolution of each of the Debtors, and the only actions left to be taken are the winding up of the Debtors' affairs by the remaining partners. *See id*. As explained below, however, ACG's bankruptcy filing ***did not*** cause the dissolution of each of the Debtors, and ACG therefore retained its authority to file the remaining Reorganization Cases.

A. *11 U.S.C. § 365(e)(1) Invalidates "Ipso Facto" Clauses*

20. Courts are generally in agreement that partnership agreements are executory contracts. *See In re Nizny*, 175 B.R. 934 (Bankr. S.D. Ohio 1994) (citing *In re Corky Foods Corp.*, 85 B.R. 903, 904 (Bankr. S.D. Fla. 1988)); *see also In re Woskob*, 305 F.3d 177, 184 n. 2 (3d. Cir. 2002) ("The District Court agreed with the Bankruptcy Court's holding that the partnership agreement constitutes an executory contract, which appears to be consistent with the

8

majority rule"); *In re Cutler*, 165 B.R. 275 (Bankr. D. Ariz. 1994) ("courts have generally assumed that partnership agreements are, at least in part, executory contracts").

21. Section 365(e)(1) of the Bankruptcy Code provides that notwithstanding a provision in an executory contract or in applicable law, an executory contract of the debtor or any right under such contract may not be terminated at any time after the commencement of the case solely because of a provision in such contract that is conditioned on the commencement of a case under this title. *See* 11 U.S.C. § 365(e)(1)(B). Section 365(e)(1) thus provides the general rule that provisions in applicable state law or agreements that terminate or modify an executory contract because a party to the contract files bankruptcy are not enforceable. Movants rely on the Debtors' partnership agreements and Texas Revised Partnership Act, as codified in the Texas Business Organizations Code, which provides that a person ceases to be a general partner of a limited partnership on the occurrence of the general partner's filing a voluntary bankruptcy petition. *See* TEX. BUS. ORGS. CODE § 153.155(a). This Texas statute thus fits squarely into the parameters of § 365(e)(1) because the purported dissolution would result "solely" from ACG's having filed bankruptcy.

22. In *Nizny*, partners in a real estate partnership filed a complaint seeking to terminate the partnership interest of a partner who had filed for bankruptcy. *See Nizny*, 175 B.R. at 934. The debtor argued that the partnership did not automatically dissolve upon its filing of a chapter 11 petition in bankruptcy because Ohio's *ipso facto* dissolution of a partnership upon the filing of bankruptcy by a partner violates the Bankruptcy Code. *See id*. at 936. The court analyzed § 365(e) and agreed with the debtor that "upon the filing of a partner's chapter 11 petition in reorganization, § 365(e)(1) prevents an ipso facto dissolution of a partnership under state law." *See id*. at 939; *see generally In re Siegal*, 190 B.R. 639 (Bankr. D. Az. 1996)

9

(bankruptcy filing by partner did not dissolve partnership because § 365(e)(1) preempts state law); *In re Rittenhouse Carpet, Inc.*, 56 B.R. 131, 132–33 (Bankr. E.D. Pa. 1985) (partnership agreement is an executory contract which cannot, pursuant to 11 U.S.C. § 365(e)(1), be affected by an *ipso facto* clause, *i.e.*, a provision of law or contract that a bankruptcy filing *per se* will terminate the contract).

23. Sections 365(c)(1) and 365(e)(2), however, provide an exception to § 365(e)(1) and govern the circumstances under which a trustee may assume an executory contract. These sections essentially provide that an executory contract may not be assumed if (1) applicable law excuses the other party to the contract from accepting performance from the debtor and (2) such party does not consent to such assumption. *See* 11 U.S.C. §§ 365(c)(1) and 365(e)(2). The plain text of § 365(e)(2)(A) requires an "actual" test for determining whether the exception under §365(e)(2)(A) is available. *See In re Mirant Corp.*, 440 F.3d 238, 247–51 (5th Cir. 2006); *see also In re Woskob*, 305 B.R. at 187 ("Subsections 365(c) and 365(e)(2) will prevent a debtor in bankruptcy from continuing to serve as a partner, however, only when a non-debtor partner does not consent to continue in the partnership with the debtor"). Movants, therefore, must demonstrate both that applicable law excuses the limited partners from accepting performance from ACG under the partnership agreement and that the limited partners do not consent to ACG's assumption.[5] Here, §§ 365(c)(1) and 365(e)(2) clearly do not apply, as the limited partners have expressed no objection to the continuation of ACG as the general partner. Thus, the exceptions found in §§ 365(c)(1) and 365(e)(2)(A) are unavailable to Movants and §365(e)(1) invalidates the *ipso facto* dissolution of the partnership agreement.

24. Furthermore, some courts have refused to apply §§ 365(c)(1) and 365(e)(2) when

---

[5] This is an additional indicator of Movants' lack of standing, as this would clearly be an argument for the limited partners to make, not the Movants.

there would be no material change in the identity of the person rendering performance under the partnership agreement. *See In re Nizny*, 175 B.R. at 939 ("[i]n the partnership context, at issue is whether a partner who becomes a debtor after filing for bankruptcy will assume the same partnership role that he had prior to becoming a debtor"); *see also In re Siegal*, 190 B.R. at 645; *In re Woskob*, 305 F.3d at 187. "The debtor and debtor in possession are the same entity for executory contract purposes in a Chapter 11 reorganization." *In re Daugherty Construction, Inc.*, 188 B.R. 607, 613 (Bankr. D. Neb. 1995). ACG fully intends to remain as general partner. Therefore, the limited partners are not being forced to accept an outsider as a new partner and are simply retaining the same relationship with the general partner they have always had.

### B. *Phillips and Statepark are Distinguishable and Represent a Minority View*

25.     The Movants cite *In re Phillips* for the proposition that a general partner lacks authority to place a limited partnership in chapter 11 bankruptcy after the general partner has sought chapter 11 protection for himself, thereby rendering the partnership in a state of dissolution. *See* Motion at ¶ 13. As explained below, however, *Phillips* was factually very different from the present case therefore does not apply.

26.     The critical factual difference between the present case and the *Phillips* case, is that in *Phillips* the partnership had been dissolved pursuant to a state court decree nearly one year prior to the general partner's bankruptcy filing. *See In re Phillips*, 966 F.2d 926, 928 (5th Cir. 1992). The partnership in *Phillips* was formed by a divorced couple. *See id.* Prior to the husband's personal bankruptcy filing, a Texas state court found that he had breached his fiduciary duties to his wife as the partnership's sole general partner, and as a result, ordered the partnership dissolved. *See id.* Approximately one year later, the husband filed voluntary bankruptcy petitions for himself individually and the partnership. *See id.* In holding that the

11

partnership agreement was in fact dissolved upon the husband's bankruptcy filing, the court rejected the application of § 365(e)(1), because it found that the partnership agreement was no longer executory in nature due to the state court's prior order requiring dissolution of the partnership. *See id*. at 935.

27. The facts of this case are in stark contrast to those of *Phillips*. Here, there have been no allegations that ACG breached its fiduciary duties and a state court has certainly not ordered that the partnership be dissolved. Importantly, all parties to the partnership here have expressed their intent to continue in the partnership. In Judge Rendell's concurrence in *Woskob*, he agreed that the partnership did not automatically dissolve and stated, "it seems clear that the parties intention, as reflected in the language they chose and in their conduct, compels the result we reach." *In re Woskob*, 305 F.3d at 188 (Rendell, J., concurring).

28. There are numerous reported cases which not only follow the majority rule that a partnership is an executory contract which can not terminated upon a partner's bankruptcy filing, but also specifically analyze and distinguish *Phillips*. For example, in *Clinton Court*, the court explained that the *Phillips* court did not repudiate the holding of *Rittenhouse Carpet*, which concluded that a partnership agreement is an executory contract which cannot, pursuant to 11 U.S.C. § 365(e)(1), be affected by an *ipso facto* clause. *See In re Clinton Court*, 160 B.R. 57, 59 (Bankr. E.D. Pa. 1993). Rather, *Phillips* "merely [held] that the partnership agreement in issue in that case was no longer executory at the time of the husband's bankruptcy filings for himself and the partnership because the partnership had been dissolved by a prepetition state court decree." *Id*. The court in *Clinton Court* further reasoned, "[a]ll of the pertinent cases appear to agree that a partnership agreement is an executory contract unless it has been terminated by a state court decree on grounds other than those related to a partner's bankruptcy filing, as in

*Phillips*." *In re Clinton Court*, 160 B.R. at 60.

29.  Furthermore, the court in *Siegal* similarly held that 11 U.S.C. § 365(e)(1) prevents automatic dissolution of a partnership agreement while recognizing that *Phillips* held differently. *See In re Siegal*, 190 B.R. at 642. The court explained, "[t]he *Phillips* court, however, was faced with a different set of facts where the partnership at issue was dissolved prepetition by a state court judgment." *Id*. In sum, as a majority of cases decided after *Phillips* indicate, *Phillips* was a narrow holding confined to the specific facts of that case.

30.  It should also be noted that *In re Statepark Bldg. Group, Ltd.*, 316 B.R. 466 (Bankr. N.D. Tex. 2004), another case cited by Movants, represents another fact situation in which there was a state court order that dissolved the partnership prior to the partner's bankruptcy filing. *See* 316 B.R. at 471 ("it was the appointment of a receiver for the purpose of liquidating the limited partnerships that had the effect of dissolving the limited partnerships"). Both *Phillips* and *Statepark* are thus clearly distinguishable from the case at hand.

31.  Notably, as pointed out in *Woskob*, the position taken in *Phillips* is in contrast with the recommendation of the National Bankruptcy Review Commission. *See In re Woskob*, 305 F.3d at 186 n. 3. In its Final Report, the Commission recommended that "ipso facto provisions relating to partnerships and the rights or interests of partners should not be enforceable under the Bankruptcy Code." *Id*. Just because a partner has sought relief under the Bankruptcy Code, there is no compelling interest served by mandating an automatic dissolution of the partnership. *Id*.

32.  To find that the partnerships dissolved merely because ACG happened to file for bankruptcy first would lead to an inequitable result. The technical order of the Debtors' bankruptcy filings should not have the effect of dissolving the partnership and completely

13

derailing these Reorganization Cases. In fact, the court in *Clinton Court* recognized the illogicality of such a view. In *Clinton Court*, it was argued that the general partner's bankruptcy filing dissolved the partnership and prevented another partner from filing for bankruptcy on the partnership's behalf. *See In re Clinton Court*, 160 B.R. at 58. The court disagreed, recognizing that accepting such a view would preclude any filing of a bankruptcy case on a partnership's behalf. *See id.* at 60. The court explained:

> It would be impossible to file a bankruptcy case for a partnership. The filing of bankruptcy by any general partner would, under any circumstances, preclude a bankruptcy filing by the partnership. Moreover, the general partnership's own filing would dissolve it and preclude its filing. We conclude that section 365(e) was intended to prevent such an anomaly from occurring.

*Id.*

### C. *Partnership Interests Are Property of the Estate under 11 U.S.C. § 541(c)(1)*

33. Some courts have found that a partnership does not automatically dissolve upon the bankruptcy filing of a partner based upon § 541(c)(1) of the Bankruptcy Code. Section 541(c)(1) provides that an interest of the debtor in property "becomes property of the estate . . . notwithstanding any provision in any agreement, transfer instrument, or applicable nonbankruptcy law . . . that is conditioned upon the commencement of a case under this title . . . that effects a termination of the debtor's interest in the property." *See* 11 U.S.C. § 541(c)(1)(B). One court in fact distinguished *Philips* and held that it was not even necessary to analyze the executory nature of partnership contracts. *See In re Matta*, 1995 WL 664765 (Bankr. D. Vt. 1995). As opposed to applying § 365(e), the court found that § 541(c)(1), "the Bankruptcy Code's generic prohibition against ipso facto clauses," controlled. *Id*. at *2. The court reasoned:

> By enacting this section, Congress intended that all interests of the debtor at the time of filing be brought into the bankruptcy estate, including, but not limited to,

14

>executory contracts. These interests encompass, for example, a partner's right to manage a partnership. Thus, section 541(c)(1) preempts a state's ability to divest a debtor of any property rights solely by reason of a debtor's filing of a bankruptcy petition. To illustrate, a state cannot take away a debtor's right to conduct business in a partnership simply because he or she sought relief from a bankruptcy court. Any such forfeiture would fly directly in the face of the policies and commands of the Bankruptcy Code. Accordingly, presuming that Debtor was a partner at the time of filing, Debtor is still a partner today, despite 11 VSA § 1323(5).

*Id.* at *3.

34. Similarly, in *Daugherty Construction*, the court was faced with the issue of determining the validity of a Nebraska statute which dissolved a limited liability company upon the filing of a bankruptcy petition by one of its members. *See In re Daugherty Construction, Inc.,* 188 B.R. 607, 608 (Bankr. D. Neb. 1995). The court held that the limited liability company was not dissolved upon a member's bankruptcy filing based upon both §§ 541(c)(1) and 365(e)(1) of the Bankruptcy Code. *See id.* at 611–14. First, the court found that provisions of Nebraska law which purport to dissolve the LLCs upon the commencement of a bankruptcy case are not enforceable in a chapter 11 bankruptcy. *See id.* at 611. The court provided, "the two LLCs do not dissolve under state law because dissolution of the business enterprise is inconsistent with the Bankruptcy Code requirement of section 541(c)(1) that the debtor's interest not be terminated by commencement of a bankruptcy case." *Id*. The court then analyzed the executory nature of the LLC Articles and Agreements and found that § 365(e) barred the dissolution of the LLC. *See id.* at 612. The court then concluded that § 541(c)(1) assures that the LLC membership interest becomes property of the bankruptcy estate and § 365(e) performs the completely different function of assuring that the executory contract can not be terminated after the commencement of the bankruptcy case. *See id.* at 613. The court recognized that its conclusions "are supported, in analogy, by bankruptcy court interpretations in the area of

partnership law," and that the line of decisions concluding that a partnership dissolves upon the filing of a bankruptcy case by a general partner represents "a distinct minority position." *Id*. at 614.

### D. *The Automatic Stay Prevents Dissolution of the Partnership*

35.     Lastly, it is important to note that even if dissolution of the partnership was automatic upon ACG's bankruptcy filing, which it clearly was not in this case, the automatic stay prevents actual dissolution in the absence of an order lifting the stay. *See In re Siegal*, 190 B.R. at 640 n. 1 ("the Partnership Agreement in the instant case will dissolve, if at all, only after an order lifting the stay to allow dissolution"). The Code itself requires that the stay's effect be automatically triggered upon the filing of a petition for bankruptcy. *See In re Mirant Corp.*, 440 F.3d at 251. "Furthermore, this court has recognized the automatic stay's broad application and noted that such breadth reflects a congressional intent that courts will presume protection of property when faced with uncertainty or ambiguity." *Id*. In *Mirant*, the Fifth Circuit analyzed the interplay between *ipso facto* clauses and the automatic stay. In so doing, the court held:

> Here, Mirant's interest in the Agreement, even if it were ultimately terminable, became property of the estate upon Mirant's filing on July 14, 2003. Accordingly, the Agreement was subject to review by the bankruptcy court, and a party with an interest in an executory contract or lease must come before the bankruptcy court to move for a modification or lift of the stay under section 362(d) in order to effect the terms of an ipso facto clause under section 365(e)(2)(A). . . . Even when section 365(e)(2)(A) will ultimately permit a nondebtor party to terminate an executory contract by virtue of the combined effect of section 365(e)(2)(A), applicable law, and an ipso facto clause, the nondebtor party must seek relief from the stay before the bankruptcy court under section 362(d).

*Id*. at 252. Thus, in this instance, even if Movants were able to demonstrate that the exception provided in § 365(e)(2)(A) applied, which it clearly does not, the automatic stay would still prevent the dissolution of the partnership upon the general partner's bankruptcy filing.

16

# V.
# CONCLUSION

36. In sum, Movants lack standing to bring the Motion because only the holder of an equity interest in the specific debtor in question is a proper party in interest for purposes of seeking to dismiss that debtor's case for lack of corporate authority. In addition, as explained above, there are numerous grounds on which the Motion should be denied. The partnership agreement is an executory contract which became a part of ACG's bankruptcy estate upon its filing. Further, § 365(e)(1) of the Bankruptcy Code clearly preempts the Texas Revised Partnership Act and invalidates an *ipso facto* dissolution of the partnership. Lastly, even if the Bankruptcy Code's invalidation of *ipso facto* clauses did not apply here, the automatic stay nonetheless prevented the dissolution of the partnership. Therefore, the partnership remained in effect when ACG filed for chapter 11 relief, and ACG thus retained the authority to file petitions on behalf of the remaining partners.

WHEREFORE, ACG requests that this Court enter an order denying the Motion in its entirety and granting such other and further relief as the Court may deem just and proper. Respectfully submitted on the 15th day of March, 2010.

**OKIN ADAMS & KILMER LLP**

By:     /s/ *Matthew S. Okin*
      Matthew S. Okin (TB# 00784695)
      mokin@oakllp.com
      Sara Mya Patterson (TB# 24062938)
      spatterson@oakllp.com
      1113 Vine St. Suite 201
      Houston, TX  77002
      Tel:  (713) 228-4100
      Fax:  (888) 865-2118

**ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing Motion and Response was served upon the parties on the attached service list via United States Mail, postage prepaid and/or via e-mail on the 15th day of March, 2010.

I further certify that a true and correct copy of the forgoing Motion and Response was served upon each of the Debtors' limited partners, as shown on the Lists of Equity Security Holders filed with the Court on March 2, 2010 via United States Mail, postage prepaid on the 15th day of March, 2010.

                                                                */s/ Matthew S. Okin*
                                                                Matthew S. Okin