## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-20041 |
| | § | |
| AMIDEE CAPITAL GROUP, INC., ET AL., | § | CHAPTER 11 |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

## DEBTORS' MOTION FOR ORDER (I) AUTHORIZING AND APPROVING SALE OF REAL PROPERTY IN HOUSTON, TEXAS AND (II) AUTHORIZING DEBTORS TO USE SALE PROCEEDS TO PAY CERTAIN CLAIMS AND EXPENSES ASSOCIATED WITH THE PROPERTY

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THIS MOTION MAY BE SET FOR EXPEDITED CONSIDERATION. YOU MAY HAVE LESS THAN 21 DAYS TO RESPOND.**

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Amidee Capital Group, Inc. ("ACG" or the "Debtor") on behalf of itself and its affiliates, all debtors and debtors in possession in the above referenced bankruptcy proceedings, filing this Motion for Order (I) Authorizing and Approving Sale of Property in

Houston, Texas and (II) Authorizing Debtor to Use Sale Proceeds to Pay Certain Claims and Expenses Associated with the Real Property (the "Motion"), pursuant to §§ 105 and 363 of the Bankruptcy Code, and in support hereof, respectfully states as follows:

## I.
## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## BACKGROUND

2.      On January 4, 2010 (the "Petition Date"), Amidee 2006 Preferred-Corpus, Ltd. d/b/a the Atrium ( "Amidee-Corpus"), a Texas limited partnership, filed a voluntary petition for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court").

3.      On January 17, 2010, ACG and nine of its other subsidiaries, including Amidee 2008, filed voluntary petitions for relief under chapter 11 in this Court.[1]   The Debtors' bankruptcy cases are collectively referred to as the "Reorganization Cases."   On January 21, 2010, the Court entered an order [Doc. No. 15] directing that all eleven Reorganization Cases be jointly administered under ACG's bankruptcy case which is Case No. 10-20041.  Pursuant to §§

---

[1] The ACG subsidiaries who filed bankruptcy petitions on January 17, 2010, were: Amidee 2004-I Tax Deed and Certificate Investment Program, Ltd. ("Amidee 2004 Tax"); Amidee 2005-II Tax Deed Investment Program, Ltd. ("Amidee 2005 Tax"); Amidee 2006-III Tax Deed and Real Estate Investment Program, Ltd. ("Amidee 2006 Tax"); Amidee 2006 Preferred Real Estate Income Program, Ltd. ("Amidee 2006 Preferred"); Amidee 2006 Commercial Real Estate Income Program, Ltd. ("Amidee 2006 Commercial"); Amidee 2007-I CRE Income Fund, Ltd. ("Amidee 2007"); Amidee 2008-I CRE Income Fund, Ltd. ("Amidee 2008"); Amidee 2009-I CRE Income Fund, Ltd. ("Amidee 2009"); and Amidee Oak Pointe Apartments, LLC ("Amidee Oak Pointe") (collectively with Amidee Corpus, the "Subsidiary Debtors" and with ACG, the "Debtors").

1107(a) and 1108 of the Bankruptcy Code, the Debtors are managing their property as debtors in possession.  No trustee or examiner has been appointed in these Reorganization Cases.

4.       ACG, a Texas corporation, is Amidee 2006 Preferred's sole general partner and owns one-percent (1%) of its partnership interests.  Amidee 2006 Preferred has numerous limited partners as shown on its List of Equity Security Holders [Docket No. 98] that own the remaining ninety-nine percent (99%) of Amidee 2006 Preferred's partnership interests.  Amidee 2006 Preferred is a limited partnership that exists to operate several real property assets—an office building located at 14420 W. Sylvanfield Drive, Houston, Texas (the "Sylvanfield Building") and the Findlay Apartment Complex located at 8117 and 8119 Findlay Street, Houston, Texas ("Findlay Apartments") (together with the Sylvanfield Building, the "Real Property").

5.       ACG is in the business of owning and managing real estate through its own holdings and through various limited partnerships such as Amidee 2006 Preferred.  In exchange for an annual fee of 3% of gross revenues, ACG manages the Real Property and other similar property owned by its subsidiaries and markets them for sale when a sale is deemed necessary.

6.       In order to finance the purchase of the Sylvanfield Building, Amidee 2006 Preferred obtained a commercial loan from National Guardian Life Insurance Company ("NGLI").  In connection with the loan, ACG, on Amidee 2006 Preferred's behalf, signed a Deed of Trust Note (the "Note") payable to National Guardian Life Insurance Company in the amount of $1,300,000.  The Note is secured by a first Deed of Trust and Security Agreement, Fixture Filing Statement, Assignment of Rents and Leases and Guaranty Agreement (together with the Note, the "Loan Documents").  ACG does not know the exact amount currently due to NGLI under the Note, but believes that the principal balance of the Note as of the Petition Date was approximately $1,296,741.00.

3

7.      After the purchase of the Sylvanfield Building, the Debtors intended to continue to operate the property and further develop the property's cash flow.  Although the Debtors have made improvements to the building and attempted to obtain more tenants, the Sylvanfield Building has incurred negative cash flows from operations, and Amidee 2006 Preferred has therefore found itself in a liquidity crisis.

8.      On April 5, 2010, Amidee 2006 Preferred entered into a written agreement with a prospective purchaser of the Sylvanfield Building.  The earnest money contract signed by Amidee 2006 Preferred provides for a cash purchase price of $1.65 million for the Sylvanfield Building along with all furniture and equipment located therein that is not subject to a lease agreement (together the "Property") to be paid by the purchaser at closing of the sale which is to occur on or before May 5, 2010.  Upon the closing of this sale, less than 25 days from the filing of this Motion, Amidee 2006 Preferred should have enough funds available to pay the full amount due to NGLI under the Note.

**Amidee 2006 Preferred's Assets and Liabilities**

9.      Amidee 2006 Preferred owns the Sylvanfield Building which is a 25,609sq. ft. Office Building located in Houston, Texas.  Although the Sylvanfield Building is burdened by approximately $1,296,741.00 in secured debt held by NLGI, the Debtors believe this property is worth in excess of $1.6 million.  The furniture located in the Sylvanfield Building is the personal property of ACG and ACG consents to the sale of its furniture.

10.     NLGI has an outstanding loan to Amidee 2006 Preferred with a principal balance of approximately $1,296,741.00 which is secured by the Sylvanfield Building, an assignment of rents and leases and guaranty agreement.  To the best of the Debtors' knowledge, the Sylvanfield Building is not burdened by liens or security interests other than those of NGLI and is owned by

Amidee 2006 Preferred.  Further, any personal property located within the Sylvanfield building that is not property of the Debtors or is subject to a lease agreement is not included in this sale. Therefore, the Debtors have substantial equity in the Sylvanfield Building and all personal property located at same.

**The Marketing and Sale of the Sylvanfield Building**

11.　　ACG has not been actively marketing the Sylvanfield Building since it was ACG's headquarters, but a couple of months ago it did have the property listed for sale online. On April 4, 2010, the Debtors entered into a Commercial Contract–Improved Property (the "Sale Agreement") whereby Waller Marine, Inc. (the "Buyer") agreed to purchase the Sylvanfield Building and all furniture and fixtures located therein for a cash price of $1,650,000.00.  A true and correct copy of the fully executed Sale Agreement is attached to this Motion as **Exhibit A**. Included in the Sale Agreement is a list of all furniture that Buyer is purchasing.

**III.**
**TERMS OF THE SALE AGREEMENT**

12.　　The material terms of the Sale Agreement are as follows:

　　a.　　The Sylvanfield Building will be sold to the Buyer for the purchase price of $1,650,000.00.

　　b.　　Buyer is required to deposit $16,500.00 in earnest money with Fidelity National Title (the "Title Company") within three days after execution of the Sale Agreement, and the deposit has in fact been made.  Further, Buyer will deposit an additional $7,500.00 with the Title Company within 3 days after the Buyer's right to terminate the Sale Agreement expires.

　　c.　　The Buyer's purchase is not subject to its ability to obtain conventional financing from a 3rd party lender.

　　d.　　Buyer may terminate the contract for any reason within 15 days after the effective date by providing Seller written notice of termination.  If Buyer does not terminate within the time required, Buyer accepts the Property in its present "as is" condition.  If Buyer terminates within the time required,

5

the earnest money will be refunded to Buyer less $1,000.00 that Seller will retain as independent consideration for Buyer's right to terminate.

e.    The closing of the sale will be on or before May 5, 2010.

f.    The Sale Agreement is subject to approval by the Bankruptcy Court and if the Debtors fail to obtain a final order from the Court approving the terms and conditions of the sale within 90 days of the effective date, the Sale Agreement will terminate and all earnest money will be returned to the Buyer.

g.    Buyer acknowledges that the Debtors have the right to accept another higher offer for the Real Property if received prior to closing pursuant to 11 U.S.C. § 363.

## IV.
## LEGAL AUTHORITY AND JUSTIFICATION FOR REQUESTED RELIEF

13.    By this Motion, the Debtors seek authority to sell the Property and respectfully request that the Court enter an order approving the Sale Agreement and authorizing the Debtors to complete the proposed sale in the manner described herein.  The Debtors further request that at closing of the sale the Court authorize the Debtors to apply the sale proceeds to (a) pay the claims of NGLI; (b) pay the real and personal property taxes due on the Sylvanfield Building for 2009 (if any) and pay the prorated portion of the estimated property taxes due for 2010 through the closing as required by the Sale Agreement; and (c) pay the real estate commission due to ACG.[2]

**Authority to Enter into the Sale Agreement**

14.    Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  Section 363(b) of the Bankruptcy Code provides that a

---

[2] Pursuant to the Sale Agreement, the Seller's real estate broker is entitled to be paid 3% of the total sale price as commission on the sale.  ACG, acted as the broker on this sale and, by agreement, is entitled to the Seller's broker's 3% commission, as compensation for its efforts in arranging this sale.

debtor, "after notice and a hearing, may use, sell or lease other than in the ordinary course of business, property of the estate." In general, a debtor may use, sell or lease property of the estate outside of the ordinary course of its business where the sale represents an exercise of the debtor's sound business judgment. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) ("there must be some articulated business justification for using, selling or leasing the property outside the ordinary course of business"); *In re Abbotts Dairies of Pa., Inc*., 788 F.2d 143, 145–47 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the pre-confirmation sale of assets); *In re Phoenix Steel Corp*., 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a § 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

**The Sale of the Sylvanfield Building**

15.     The Debtors believe that, for the reasons set forth herein, the proposed sale of the Sylvanfield Building represents a prudent and proper exercise of their business judgment and is supported by articulated business reasons.

16.     Although the Sylvanfield Building was not listed for numerous months, the current offer is the best offer received and the Debtors' believe it is a reasonable price in this current down-market. The Buyer is a third-party buyer with whom the Debtors have no prior connection. The consideration to be paid for the Property under the terms of the Sale Agreement is fair and reasonable considering the current state of the economy and the sale of the Property was negotiated at arms' length.

17.     Finally, the Debtors and the Buyer have entered into the Sale Agreement in good faith.  Courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are fully disclosed.  *See, e.g., In re Abbotts Dairies of Pennsylvania. Inc.*, 788 F2d 143, 149-50 (3d Cir. 1988).  These conditions apply to the sale of the Sylvanfield Building pursuant to the Sale Agreement.

**Reservation of Additional Offers**

18.     The Buyer is aware that the Debtors are allowed to accept any higher offers for the purchase of the Property prior to closing the proposed sale.  The Debtors have requested an expedited hearing on this Motion in order to obtain authority to close the proposed sale prior to May 5, 2010 as provided in the Sale Agreement (the "Sale Hearing").  If within 5 days of the Sale Hearing the Debtors receive a written offer that is at least $25,000 higher than the current proposed sale price and the Debtors determine that the offer is an otherwise bona fide offer to purchase:  (1) the Debtors will notify all interested parties by filing a notice of the new offer with this Court; (2) the Debtors will conduct an auction between the Buyer and any new purchasers making bona fide offers; and (3) the Debtors will seek the Court's approval at the Sale Hearing of a sale to the winning bidder at the auction.  The Debtors shall conduct the auction at a day and time convenient to the Debtors but prior to the Sale Hearing.  Even if the Debtors receive another offer to purchase the Sylvanfield Building, the Debtors shall continue with the deadlines set for any hearings on this Motion with the new buyer.

**Payment to Secured Lender**

19.     The Debtors request that the Court authorize the Debtors to use the proceeds from the sale of the Sylvanfield Building to pay the secured obligations owed to NGLI.  At or prior to the Sale Hearing, the Debtors will provide a list of agreed upon amounts to be paid to NGLI.

Once a final amount is agreed upon by Debtors and NGLI, all amounts due on the claims will be paid out of the sale proceeds by the Title Company at closing.  Upon payment at the closing, NGLI's liens on the Sylvanfield Building and all other property of Amidee 2006 Preferred's estate will be released.

20.     Although the Debtors are not aware of any other secured claims other than those held by NGLI, to the extent that any other perfected liens exist, the Debtors seek authority to sell the Property free and clear of such liens.  The liens, if any, will attach to the applicable proceeds with the same validity and priority as they attached to the Property or applicable portion thereof.

21.     Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell property "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

> (1)     applicable non-bankruptcy law permits the sale of such property free and clear of such interest;
> (2)     such entity consents;
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate *v*alue of all liens on such property;
> (4)     such interest is in bona fide dispute; or
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

22.     Applicable case law provides that a sale of a debtor's assets free and clear of all liens, with such liens attaching to the net proceeds of the sale is permissible under § 363(f).  *See Folger*, 209 F.3d at 259 ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of Section 363(f) and, therefore, attaches to the proceeds of the sale."); *In re WPRV-TV, Inc*., 143 B.R. 315, 321 (D. P.R. 1991); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

23.     Further, with respect to § 363(f), all known lien-holders will receive service of the Motion and will have an opportunity to object.  The Debtors anticipate that any lien-holders will consent or be deemed to consent to the sale of the Property given that all liens will either be paid from the sale proceeds or will attach to the net proceeds.  The sale of the Sylvanfield Building, therefore, will likely satisfy the second element of § 363(f).  *See Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, secured creditor deemed to consent under § 363(f)(2)).

24.     Accordingly, pursuant to § 363(b), the Debtors request authority to sell the Sylvanfield Building and use the sale proceeds to pay off debts owed to NGLI.  Furthermore, the Debtors submit that any other such liens will be adequately protected under § 363(f) by attachment to the net proceeds for sale of the Property or applicable portion thereof, subject to any claims and defenses the Debtors may possess with respect thereto.  The sale of the Property on the terms and conditions set forth in the Sale Agreement satisfies the requirements of § 363 of the Bankruptcy Code and is in the best interest of the Debtors' estates.

**Payment of Property Taxes**

25.     The Debtors further request authority to pay certain real property taxes related to the Sylvanfield Building.  Pursuant to the Sale Agreement, all real property taxes will be prorated through the closing date.  The Debtors believe that the property taxes currently owed on the Sylvanfield Building for 2009 are approximately $45,000.00 and estimate that the prorated portion of the property taxes due by the seller for 2010 will be approximately $18,750.00.[3]

26.     Under Texas law, the applicable taxing authorities are granted statutory liens on the property for the total amount of taxes owed. Tex. Tax Code Ann. § 32.01 (Vernon 2001).  In

---

[3] Assuming a closing on May 5, 2010.  If closing occurs sooner, the amount owed will be reduced.

addition, this tax lien has priority over all liens imposed against the property. *Id.* at § 32.05. The taxes, therefore, are fully secured by liens on the Sylvanfield Building. In the exercise of its equitable powers under § 105(a) of the Bankruptcy Code, courts have frequently authorized payment of these types of taxes where such payments would benefit the estate. *See, e.g., In re Pillowtex, Inc.*, 2002 WL 32332071 (Bankr. D. Del. 2002) (authorizing the payment of prepetition real property taxes in order to avoid further accrual of interest and penalties).

**Payment of Compensation to Buyer and Seller's Brokers**

27.     Finally, the Debtors request authority to compensate ACG as it acted as the Commercial Real Estate Broker pursuant to the Sale Agreement. As shown on the Sale Agreement, ACG is entitled to a commission of three-percent (3%) of the sales price, which amounts to $49,500.00. The Debtors respectfully submit that the commission stated above is reasonable and customary for matters of this type and seek authority to pay the commission out of the sales proceeds of the Sylvanfield Building.

WHEREFORE, the Debtors respectfully request that the Court enter an order (I) authorizing and approving the sale of the Sylvanfield Building; (II) authorizing the Debtors to use the sale proceeds to pay certain claims and expenses associated with the Sylvanfield Building, and (III) granting such other relief as may be just and proper.

Respectfully submitted this 13th day of April, 2010.

11

**OKIN ADAMS & KILMER LLP**

By:   _/s/ Sara Mya Patterson_____
    Matthew S. Okin (TB# 00784695)
    mokin@oakllp.com
    Sara Mya Patterson (TB# 24062938)
    spatterson@oakllp.com
    1113 Vine St. Suite 201
    Houston, TX  77002
    Tel:  (713) 228-4100
    Fax:  (888) 865-2118

**ATTORNEYS FOR THE DEBTORS**

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that true and correct copies of the above Motion, were served upon the parties on the attached service list and to the parties listed below via facsimile, electronic mail or United States Mail, postage prepaid, as indicated, on this 13th day of April, 2010.


Ronald A. Simank
Schauer & Simank, P.C.
615 North Upper Broadway, Suite 2000-MSC 159
Corpus Christi, Texas 78477
rsimank@cctxlaw.com

Leo Vasquez
P.O. Box. 4663
Houston, Texas 77210

N.W. Harris County Mud #21
11111 Katy Freeway #725
Houston, Texas 77079

Spring I.S.D. Tax Office
P.O. Box. 90458
Houston, Texas 77290

Waller Marine
14410 W. Sylvanfield Drive
Houston, Texas 77014

                 _/s/ Sara Mya Patterson_____
                 Sara Mya Patterson

**TEXAS ASSOCIATION OF REALTORS®**
## COMMERCIAL CONTRACT - IMPROVED PROPERTY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2005

FTHI0003450

1. **PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

> Seller:  __Amidee 2006 Preferred Real Estate Income Program, Ltd.__
> Addres:  __14420 W Sylvanfield Houston, TX 77014__
> Phone:  __281-315-2100__
> E-ma  __dbrickley @ lecg . com__
>
> Buyer:  __Waller Marine, inc__
> Addres  __14410 W Sylvanfield Houston, TX 77014__
> Phone:  __281-444-9650__
> E-mail:  __DWALLER @ WALLERMARINE.COM__    __AWALLER @ WALLERMARINE.COM__

2. **PROPERTY:**

> A. "Property" means that real property situated in ____Harris____ County, Texas
> at __14420 W Sylvanfield, Houston, TX 77014__
> and that is legally described on the attached Exhibit _____ or as follows:
>
> RES D8 NORTHCHASE PARK SEC 1
>
> RES B2-A NORTHCHASE PARK SEC 4
>
> INCLUDING ALL NON-LESSEE FURNITURE, COMPUTERS, FIXTURES AND EQUIPMENT LOCATED THEREIN.

> B. Seller will sell and convey the Property together with:
> (1) all buildings, improvements, and fixtures;
> (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
> (3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
> (4) Seller's interest in all licenses and permits related to the Property;
> (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
> (6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
> (7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except: _____ .
>
> *(Describe any exceptions, reservations, or restrictions in Paragraph 12 or an addendum.)*
> *(If the Property is a condominium, attach condominium addendum.)*

3. **SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

> A. Cash portion payable by Buyer at closing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ __1,650,000__
>
> B. Sum of all financing described in Paragraph 4 . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
>
> C. Sales price (sum of 3A and 3B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ __1,650,000__

(TAR-1801) 10-18-05   Initialed for Identification by Buyer __AW__, _____ and Seller _____, _____    Page 1 of 13

Commercial Contract - Improved Property concerning <u>14420 W Sylvanfield</u>

**4. FINANCING:** Buyer will finance the portion of the sales price under Paragraph 3B as follows:

☐ A. <u>Third Party Financing</u>: One or more third party loans in the total amount of $_____.  This contract:

  ☒ (1) is <u>not</u> contingent upon Buyer obtaining third party financing.
  ☐ (2) is contingent upon Buyer obtaining third party financing in accordance with the attached Commercial Contract Financing Addendum.

NA☐ B. <u>Assumption</u>:  Buyer will assume the existing promissory note secured by the Property, i.e., Non Recourse Loan only, which will be balance at closing $_____ .

NA☐ C. <u>Seller Financing</u>:  The delivery of a promissory note and deed of trust from Buyer to Seller under the terms of the attached Commercial Contract Financing Addendum in the amount of $_____.

**5. EARNEST MONEY:**

  A. Not later than 3 days after the effective date, Buyer must deposit $ 16,500_____  as earnest money with _____Wendy Trahan_____281-893-9588_____ (escrow agent) at _____ Fidelity National Title, 4572 FM 1960 West, Houston, TX 77069 _____ (address). If Buyer fails to timely deposit the earnest money, Seller may terminate this contract by providing written notice to Buyer before Buyer deposits the earnest money and may exercise Seller's remedies under Paragraph 15.

  B. Buyer will deposit an additional amount of $ 7,500_____with the escrow agent to be made part of the earnest money on or before:
  ☒ (i) _3_____days after Buyer's right to terminate under Paragraph 7B expires; or
  ☐ (ii) _____.
  Buyer will be in default if Buyer fails to deposit the additional amount required by this Paragraph 5B within 3 days after Seller notifies Buyer that Buyer has not timely deposited the additional amount.

  C. Buyer may instruct the escrow agent to deposit the earnest money in an interest-bearing account at a federally insured financial institution and to credit any interest to Buyer.

**6. TITLE POLICY, SURVEY, AND UCC SEARCH:**

  A. <u>Title Policy</u>:

  (1) Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy) issued by _Fidelity National Title,_____ (title company) in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title policy, subject only to:
  (a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and
  (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

  (2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements:
  ☒ (a) will not be amended or deleted from the title policy.
  ☒ (b) will be amended to read "shortages in areas" at the expense of  X☐ Buyer  ☐ Seller.

  (3) Buyer may object to any restrictive covenants on the Property within the time required under Paragraph 6D.

  (4) Within _10__days after the effective date, Seller will furnish Buyer a commitment for title insurance (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's address.

(TAR-1801) 10-18-05   Initialed for Identification by Buyer _Aw_✓_, _____ and Seller _____✓_ _____          Page 2 of 13

Commercial Contract - Improved Property concerning  14420 W Sylvanfield

B. <u>Survey:</u> Within  10     days after the effective date:

☐ (1) Buyer will obtain a survey of the Property at Buyer's expense and deliver a copy of the survey to Seller.  The survey must be made in accordance with the Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

☐ (2) Seller, at Seller's expense, will furnish Buyer a survey of the Property dated after the effective date. The survey must be made in accordance with the Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

☒ (3) Seller will deliver to Buyer and the title company a true and correct copy of Seller's existing survey of the Property dated _____ along with an affidavit required by the title company for approval of the survey.  If the survey is not acceptable to the title company, Seller, at Seller's expense, will obtain a survey acceptable to the title company and deliver the acceptable survey to the buyer and the title company within 15 days after Seller receives notice that the existing survey is not acceptable to the title company.  The closing date will be extended daily up to 15 days if necessary for Seller to deliver an acceptable survey within the time required.

C. <u>UCC Search:</u>

☑ (1) Within  10     days after the effective date, Seller, at Seller's expense, will furnish Buyer a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.

~~(2) Buyer does not require Seller to furnish a UCC search.~~

D. <u>Buyer's Objections to the Commitment, Survey, and UCC Search:</u>

(1) Within  5     days after Buyer receives the commitment, copies of the documents evidencing title exceptions, any required  survey, and any required UCC search, Buyer may object to matters disclosed in the items if: (a) the matters disclosed constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing or Buyer will assume at closing; or (b) the items show that any part of the Property lies in a special flood hazard area (an "A" or "V" zone as defined by FEMA).  If Paragraph 6B(1) applies, Buyer is deemed to receive the survey on the earlier of: (i) the date Buyer actually receives the survey; or (ii) the deadline specified in Paragraph 6B.

(2) Seller may, but is not obligated to, cure Buyer's timely objections within 15 days after Seller receives the objections.  The closing date will be extended as necessary to provide such time to cure the objections.  If Seller fails to cure the objections by the time required, Buyer may terminate this contract by providing written notice to Seller within 5 days after the time by which Seller must cure the objections. If Buyer terminates, the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer.

(3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object except that Buyer will not waive the requirements in Schedule C of the commitment.

7. **PROPERTY CONDITION:**

A. <u>Present Condition:</u>  Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing:      Property      sold      as      is      
_____
_____
_____

(TAR-1801) 10-18-05   Initialed for Identification by Buyer  Aw  , _____  and Seller _____ , _____                Page 3 of 13

Commercial Contract - Improved Property concerning  14420 W Sylvanfield

B. Feasibility Period: Buyer may terminate this contract for any reason within _15_____days after the effective date (feasibility period) by providing Seller written notice of termination. *(Check only one box.)*

☒ (1) If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $ 1000.00_____ that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the escrow agent.  The independent consideration is to be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(1) or if Buyer fails to timely deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.

☐ (2) Not later than 3 days after the effective date, Buyer must pay Seller $_____ as independent consideration for Buyer's right to terminate by tendering such amount to Seller or Seller's agent.  If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer and Seller will retain the independent consideration.  The independent consideration will be credited to the sales price only upon closing of the sale.  If no dollar amount is stated in this Paragraph 7B(2) or if Buyer fails to timely pay the independent consideration, Buyer will not have the right to terminate under this Paragraph 7B.

C. Inspections, Studies, or Assessments:

(1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

(2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspections, studies, or assessments.

(3) Buyer must:
(a) employ only trained and qualified inspectors and assessors;
(b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
(c) abide by any reasonable entry rules or requirements of Seller;
(d) not interfere with existing operations or occupants of the Property; and
(e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

(4) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph.  This paragraph survives termination of this contract.

D. Property Information:

(1) Delivery of Property Information: Within _5_____days after the effective date, Seller will deliver to Buyer:
☒ (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;
☒ (b) copies of all current leases pertaining to the Property, including any modifications, supplements, or amendments to the leases;
☒ (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;

(TAR-1801) 10-18-05   Initialed for Identification by Buyer  AⱮ , _____ and Seller _____ , _____          Page 4 of 13

Exhibit A

Commercial Contract - Improved Property concerning: 14420 W Sylvanfield

    ☒ (d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;

    ☒ (e) copies of all current service, maintenance, and management agreements relating to the ownership and operation of the Property;

    ☒ (f) copies of current utility capacity letters from the Property's water and sewer service provider;

    ☒ (g) copies of all current warranties and guaranties relating to all or part of the Property;

    ☒ (h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;

    ☒ (i) copies of all leasing or commission agreements that currently relate to all or part of the Property;

    ☒ (j) a copy of the "as-built" plans and specifications and plat of the Property;

    ☒ (k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;

    ☐ (l) a copy of Seller's income and expense statement for the Property from _____ to _____ : 

    ☒ (m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;

    ☒ (n) real & personal property tax statements for the Property for the previous 2 calendar years; and

    ☐ (o) _____
            _____
            _____
            _____.

    (2) <u>Return of Property Information</u>: If this contract terminates for any reason, Buyer will, not later than 10 days after the termination date: (a) return to Seller all those items described in Paragraph 7D(1) that Seller delivered to Buyer and all copies that Buyer made of those items; and  (b) deliver copies of all inspection and assessment reports related to the Property that Buyer completed or caused to be completed. This Paragraph 7D(2) survives termination of this contract.

 E. <u>Contracts Affecting Operations</u>: Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property, or any of the personal property or other items described in Paragraph 2B or sold under this contract. After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

**8. LEASES:**

 A. Each written lease Seller is to assign to Buyer under this contract must be in full force and effect according to its terms. Seller may not enter into any new lease, fail to comply with any existing lease, or make any amendment or modification to any existing lease without Buyer's written consent. Seller must disclose, in writing, if any of the following exist at the time Seller provides the leases to the Buyer or subsequently occur before closing:

    (1) any failure by Seller to comply with Seller's obligations under the leases;

    (2) any circumstances under any lease that entitle the tenant to terminate the lease or seek any offsets or damages;

    (3) any non-occupancy of the leased premises by a tenant;

    (4) any advance sums paid by a tenant under any lease;

    (5) any concessions, bonuses, free rents, rebates, brokerage commissions, or other matters that affect any lease; and

    (6) any amounts payable under the leases that have been assigned or encumbered, except as security for loan(s) assumed or taken subject to under this contract.

 B. <u>Estoppel Certificates</u>: Within __5_ days after the end of feasibility period, Seller will deliver to Buyer estoppel certificates signed not earlier than _____ by each tenant that leases space in the Property. The estoppel certificates must state:

(TAR-1801) 10-18-05   Initialed for Identification by Buyer __/\/__, _____ and Seller _____, _____       Page 5 of 13

Commercial Contract - Improved Property concerning   14420 W Sylvanfield

   (1) that no default exists under the lease by the landlord or tenant as of the date the estoppel certificate
       is signed;
   (2) the amount of the scheduled rents to be paid through the end of the lease and any rental payments
       that have been paid in advance;
   (3) the amount of any security deposit;
   (4) the amount of any offsets tenant is entitled against rent;
   (5) the expiration date of the lease;
   (6) a description of any renewal options; and
   (7) _____

## 9. BROKERS:

A. The brokers to this sale are:

| Cooperating Broker                License No. | Amidee Capital Group, Inc |
|---|---|
| | Principal Broker                License No. |
| Address | 14420 W Sylvanfield |
| | Address |
| | Houston  TX    77014 |
| Phone | Phone  281-315-2100      Fax |
| E-mail: | E-mail: |

Cooperating Broker represents buyer.

Principal Broker: *(Check only one box)*
☒ represents Seller only.
☐ represents Buyer only.
☐ is an intermediary between Seller and Buyer.

B. <u>Fees:</u> *(Check only one box.)*

☐ (1) Seller will pay Principal Broker the fee specified by separate written commission agreement
between Principal Broker and Seller.  Principal Broker will pay Cooperating Broker the fee specified
in the Agreement Between Brokers found below the parties' signatures to this contract.

☐ (2) At the closing of this sale, Seller will pay:

Cooperating Broker a total cash fee of:     Principal Broker a total cash fee of:
X _____       % of the sales price.    _____ 3% of the sales price.
☐ _____   ☐ _____

The cash fees will be paid in ____Corpus Christi_____ County, Texas. Seller authorizes
escrow agent to pay the brokers from the Seller's proceeds at closing.

*NOTICE:  Chapter 62, Texas Property Code, authorizes a broker to secure an earned commission
with a lien against the Property.*

C. The parties may not amend this Paragraph 9 without the written consent of the brokers affected by the
amendment.

## 10. CLOSING:

A. The closing of the sale will be on or before __May 5, 2010_____
_____ or within 7 days after objections
made under Paragraph 6D have been cured or waived, whichever date is later (the closing date).

(TAR-1801) 10-18-05   Initialed for Identification by Buyer  AW____ , _____ and Seller ____ , _____    Page 6 of 13

Commercial Contract - Improved Property concerning  14420 W Sylvanfield

B. If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 15.

C. At closing, Seller will execute and deliver to Buyer, at Seller's expense, a ☒ general ☐ special warranty deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property:
   (1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, unless securing loans Buyer assumes;
   (2) without any assumed loans in default; and
   (3) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract.

D. At closing, Seller, at Seller's expense, will also deliver to Buyer:
   (1) tax statements showing no delinquent taxes on the Property;
   (2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;
   (3) an assignment of all leases to or on the Property;
   (4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:
      (a) licenses and permits;
      (b) maintenance, management, and other contracts; and
      (c) warranties and guaranties;
   (5) a rent roll current on the day of the closing certified by Seller as true and correct;
   (6) evidence that the person executing this contract is legally capable and authorized to bind Seller;
   (7) an affidavit acceptable to the escrow agent stating that Seller is not a foreign person or, if Seller is a foreign person, a written authorization for the escrow agent to: (i) withhold from Seller's proceeds an amount sufficient to comply applicable tax law; and (ii) deliver the amount to the Internal Revenue Service together with appropriate tax forms; and
   (8) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary.

E. At closing, Buyer will:
   (1) pay the sales price in good funds acceptable to the escrow agent;
   (2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;
   (3) sign and send to each tenant in the Property a written statement that:
      (a) acknowledges Buyer has received and is responsible for the tenant's security deposit; and
      (b) specifies the exact dollar amount of the security deposit;
   (4) sign an assumption of all leases then in effect; and
   (5) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

F. Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

11. **POSSESSION:**  Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition with any repairs Seller is obligated to complete under this contract, ordinary wear and tear excepted.  Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

(TAR-1801) 10-18-05   Initialed for Identification by Buyer _____, _____ and Seller _____, _____          Page 7 of 13

Exhibit A

Commercial Contract - Improved Property concerning   14420 W Sylvanfield

**12. SPECIAL PROVISIONS:** *(Identify exhibit if special provisions are contained in an attachment.)*

See exhibit A - For FF&E

**13. SALES EXPENSES:**

A. Seller's Expenses:  Seller will pay for the following at or before closing:
   (1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;
   (2) release of Seller's loan liability, if applicable;
   (3) tax statements or certificates;
   (4) preparation of the deed and any bill of sale;
   (5) one-half of any escrow fee;
   (6) costs to record any documents to cure title objections that Seller must cure; and
   (7) other expenses that Seller will pay under other provisions of this contract.

B. Buyer's Expenses:  Buyer will pay for the following at or before closing:
   (1) all loan expenses and fees;
   (2) preparation fees of any deed of trust;
   (3) recording fees for the deed and any deed of trust;
   (4) premiums for flood and hazard insurance as may be required by Buyer's lender;
   (5) one-half of any escrow fee; and
   (6) other expenses that Buyer will pay under other provisions of this contract.

**14. PRORATIONS:**

A. Prorations:

   (1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.

   (2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year.  If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 14A(2) survives closing.

   (3) If Buyer assumes a loan or is taking the Property subject to an existing lien, Seller will transfer all reserve deposits held by the lender for the payment of taxes, insurance premiums, and other

(TAR-1801) 10-18-05    Initialed for Identification by Buyer _____, _____ and Seller _____, _____          Page 8 of 13

Exhibit A

Commercial Contract - Improved Property concerning   14420 W Sylvanfield

charges to Buyer at closing and Buyer will reimburse such amounts to Seller by an appropriate adjustment at closing.

B. Rollback Taxes:   If Seller changes the use of the Property before closing or if a denial of a special valuation on the Property claimed by Seller results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of Seller. If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obligation of Buyer. This Paragraph 14B survives closing.

C. Rent and Security Deposits:   At closing, Seller will tender to Buyer all security deposits and the following advance payments received by Seller for periods after closing: prepaid expenses, advance rental payments, and other advance payments paid by tenants. Rents prorated to one party but received by the other party will be remitted by the recipient to the party to whom it was prorated within 5 days after the rent is received. This Paragraph 14C survives closing.

## 15. DEFAULT:

A. If Buyer fails to comply with this contract, Buyer is in default and Seller may:
   (1) terminate this contract and receive the earnest money as liquidated damages, thereby releasing the parties from this contract; or
   (2) ~~enforce specific performance, or seek other relief as may be provided by law, or both~~.

B. If, without fault, Seller is unable within the time allowed to deliver the estoppel certificates, survey or the commitment, Buyer may:
   (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as the sole remedy; or
   (2) extend the time for performance up to 15 days and the closing will be extended as necessary.

C. Except as provided in Paragraph 15B, if Seller fails to comply with this contract, Seller is in default and Buyer may:
   (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages, thereby releasing the parties from this contract; or
   (2) enforce specific performance, ~~or seek such other relief as may be provided by law, or both~~.

## 16. CASUALTY LOSS AND CONDEMNATION:

A. If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Seller must restore the Property to its previous condition as soon as reasonably possible and not later than the closing date. If, without fault, Seller is unable to do so, Buyer may:
   (1) terminate this contract and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer;
   (2) extend the time for performance up to 15 days and closing will be extended as necessary; or
   (3) accept at closing: (i) the Property in its damaged condition; (ii) an assignment of any insurance proceeds Seller is entitled to receive along with the insurer's consent to the assignment; and (iii) a credit to the sales price in the amount of any unpaid deductible under the policy for the loss.

B. If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:
   (1) terminate this contract by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer; or
   (2) appear and defend the condemnation proceedings and any award will, at Buyer's election, belong to: (a) Seller and the sales price will be reduced by the same amount; or (b) Buyer and the sales price will not be reduced.

(TAR-1801) 10-18-05   Initialed for Identification by Buyer _____, _____ and Seller _____, _____          Page 9 of 13

Exhibit A

Commercial Contract - Improved Property concerning   14420 W Sylvanfield

**17. ATTORNEY'S FEES:** If Buyer, Seller, any broker, or any escrow agent is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.

**18. ESCROW:**

    A. At closing, the earnest money will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer.

    B. If both parties make written demand for the earnest money, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties.

    C. If one party makes written demand for the earnest money, escrow agent will give notice of the demand by providing to the other party a copy of the demand. If escrow agent does not receive written objection to the demand from the other party within 15 days after the date escrow agent sent the demand to the other party, escrow agent may disburse the earnest money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors.

    D. Escrow agent will deduct any independent consideration under Paragraph 7B(1) before disbursing any earnest money to Buyer and will pay the independent consideration to Seller.

    E. If escrow agent complies with this Paragraph 18, each party hereby releases escrow agent from all claims related to the disbursal of the earnest money.

    F. Notices under this Paragraph 18 must be sent by certified mail, return receipt requested. Notices to escrow agent are effective upon receipt by escrow agent.

**19. MATERIAL FACTS:** To the best of Seller's knowledge and belief: *(Check only one box.)*

❑  A. Seller is not aware of any material defects to the Property except as stated in the attached Property Condition Statement.

❑  B. Except as otherwise provided in this contract, Seller is not aware of:
    (1)  any subsurface: structures, pits, waste, springs, or improvements;
    (2)  any pending or threatened litigation, condemnation, or assessment affecting the Property;
    (3)  any environmental hazards or conditions that materially affect the Property;
    (4)  whether the Property is or has been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;
    (5)  whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants), or other pollutants or contaminants of any nature now exist or ever existed on the Property;
    (6)  any wetlands, as defined by federal or state law or regulation, on the Property;
    (7)  any threatened or endangered species or their habitat on the Property;
    (8)  any present or past infestation of wood-destroying insects in the Property's improvements;
    (9)  any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property;
    (10) any material physical defects in the improvements on the Property; or
    (11) any condition on the Property that violates any law or ordinance.

    *(Describe any exceptions to (1)-(11) in Paragraph 12 or an addendum.)*

(TAR-1801) 10-18-05   Initialed for Identification by Buyer _A~_/_, _____ and Seller _____, _____       Page 10 of 13

Exhibit A

Commercial Contract - Improved Property concerning   14420 W Sylvanfield

**20. NOTICES:** All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, or sent by facsimile transmission to the parties addresses or facsimile numbers stated in Paragraph 1. The parties will send copies of any notices to the broker representing the party to whom the notices are sent.

☐ A. Seller also consents to receive any notices by e-mail at Seller's e-mail address stated in Paragraph 1.

☒ B. Buyer also consents to receive any notices by e-mail at Buyer's e-mail address stated in Paragraph 1.

**21. DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**22. AGREEMENT OF THE PARTIES:**

A. This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns.

B. This contract is to be construed in accordance with the laws of the State of Texas.

C. This contract contains the entire agreement of the parties and may not be changed except in writing.

D. If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

E. Addenda which are part of this contract are: *(Check all that apply.)*
  ☐ (1) Property Description Exhibit identified in Paragraph 2;
  ☐ (2) Commercial Contract Condominium Addendum;
  ☐ (3) Commercial Contract Financing Addendum;
  ☐ (4) Commercial Property Condition Statement;
  ☐ (5) Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards;
  ☐ (6) Notice to Purchaser of Real Property in a Water District (MUD);
  ☐ (7) Addendum for Coastal Area Property;
  ☐ (8) Addendum for Property Located Seaward of the Gulf Intracoastal Waterway; and
  ☐ (9)_____
  _____
  _____.

*(Note: Counsel for the Texas Association of REALTORS® (TAR) has determined that any of the foregoing addenda which are promulgated by the Texas Real Estate Commission (TREC) or published by TAR are appropriate for use with this form.)*

F. Buyer    X ☒ may ~~with sellers written approval~~ ☐ may not  assign this contract. If Buyer assigns this contract, Buyer will be relieved of any future liability under this contract only if the assignee assumes, in writing, all of Buyer's obligations under this contract.

**23. TIME:** Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or legal holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday, or legal holiday.

**24. EFFECTIVE DATE:** The effective date of this contract for the purpose of performance of all obligations is the date the escrow agent receipts this contract after all parties execute this contract.

(TAR-1801) 10-18-05   Initialed for Identification by Buyer ____, _____ and Seller ____, _____      Page 11 of 13

Commercial Contract - Improved Property concerning  14420 W Sylvanfield

## 25. ADDITIONAL NOTICES:

A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area.  If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service.  There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property.  You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property.  The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property."  The real property is described in Paragraph 2 of this contract.

D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract.

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract.

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract.

H. Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I. Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services.  Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers.

## 26. CONTRACT AS OFFER:   The execution of this contract by the first party constitutes an offer to buy or sell the Property.   Unless the other party accepts the offer by 5:00 p.m., in the time zone in which the Property is located, on  April 6, 2010                          the offer will lapse and become null and void.

(TAR-1801) 10-18-05   Initialed for Identification by Buyer  ___,  _____  and Seller ___,  _____          Page 12 of 13

Commercial Contract - Improved Property concerning  14420 W Sylvanfield

**READ THIS CONTRACT CAREFULLY.   The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.**

Buyer: _Waller Marine, Inc._

By: _____

Printed Name: _Anthony Waller_

Title _Vice President_

Seller: _Dundee 2006 Preferred Real Estate Income Program, Ltd._

By: _____

Printed Name: _Douglas J. Brickley_

Title: _CRO_

Buyer: _____

By: _____

Printed Name: _____

Title: _____

Seller: _____

By: _____

Printed Name: _____

Title: _____

---

### AGREEMENT BETWEEN BROKERS

Principal Broker agrees to pay _____ (Cooperating Broker) a fee of $_____ or _____ % of the sales price when the Principal Broker's fee is received. Escrow agent is authorized and directed to pay Cooperating Broker from Principal Broker's fee at closing. This Agreement Between Brokers supersedes any prior offers and agreements for compensation between brokers.

Cooperating Broker _____

By: _____

Principal Broker _____

By: _____

---

### ATTORNEYS

Buyer's attorney is:

Name: _Ted A. Cox_

Address: _4910 Dacoma, Suite 100_
_Houston, Texas  77092_

Phone & Fax: _713-956-9460 / 713-956-8485_

E-mail: _Ted@TedACox.com_

Buyer's attorney requests copies of documents, notices, and other information :
☒ the title company sends to Buyer.
☐ Seller sends to Buyer.

Seller's attorney is:

Name: _Matthew S. Okin_

Address: _1113 Vine St  Suite 201_
_Houston  TX  77002_

Phone & Fax: _713-228-4101 / 888-865-2118_

E-mail: _mokin@okinllp.com_

Seller's attorney requests copies of documents, notices, and other information:
☒ the title company sends to Seller.
☐ Buyer sends to Seller.

---

### ESCROW RECEIPT

Escrow agent acknowledges receipt of:
☒  A.  the contract on this day _April 15th 2010_ (effective date);
☐  B.  earnest money in the amount of $_6000.-_ in the form of _comp. chk_ on _____.

Escrow Agent: _FIDELITY NATIONAL TITLE Insurance Company 4540 FM 1960 West Houston, TX 77069_

By: _____

Address: _____

Phone & Fax: _____

E-mail: _____

(TAR-1801) 10-18-05

Exhibit A

## SPECIAL PROVISIONS ADDENDUM

**SELLER'S BANKRUPTCY:**
**NOTICE OF FILING:** Buyer acknowledges that it has been informed that the Seller is currently a debtor in possession in a pending chapter 11 bankruptcy proceeding before the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Bankruptcy Court") docketed as Case No. 10-20007 (the "Bankruptcy Case") and that Seller must obtain an order of the Bankruptcy Court approving the proposed sale of the Property before it may be consummated. Buyer further acknowledges that the proposed sale of the property may be subject to higher and better offers pursuant to 11 U.S.C 363.

**BANKRUPTCY COURT ORDER:** Seller shall take all reasonable steps necessary to obtain an order of the Bankruptcy Court approving the terms and conditions of the transaction set forth herein and shall dilligently pursue entry of such an order. If Seller is unable to obtain entry of an order of the Bankruptcy Court approving the terms and conditions of this agreement and authorizing Seller to sell the Property to Buyer within 90 days of the Effective Date, this agreement shall become null and void and all deposits shall be returned to the Buyer.



Exhibit A

**Exhibit A - Furniture Fixtures and Equipment**

(see 12. Special Provisions for Commercial Contract for the Sale of Property
Located at 14420 W. Sylvanfield, Houston, TX 77014)

| **Reception Area** | **Office** |
|---|---|
| 1 desk | 1 desk |
| 1 desk top lamp | 1 stand up lamp |
| 1 fax machine | 1 office chair |
| 1 stand up lamp | 1 monitor |
| 1 painting | 2 mouse |
| 2 mirrors | 1 keyboard |
| 1 small table | 1 phone |
| 1 printer | 1 PC |
| 1 monitor w/ 2 speakers | 2 tall book shelves (5 shelves) |
| 1 PC | 2 guest chairs |
| 1 keyboard | |
| 1 mouse | **Office** |
| 2 phones | 1 desk |
| 3 plants | 1 office chair |
| 1 trash can | 2 guest chairs |
| 1 floor heater | 1 mouse |
| 1 coffee table | 2 monitors |
| 1 leather sofa | 1 phone |
| 1 leather chair | 1 tall book shelve (5 shelves) |
| 1 round table | 6 drawer file cabinet |
| 2 sitting chairs | 1 trash can |
| 1 coat rack | 1 speaker |
| 1 antique decorative piece | 1 printer |
| 1 office chair | 1 stand up lamp |
| 1 vase w/ fake flowers | 1 coat rack |

| **Amidee Conference Room** | **Cap Cubicles** |
|---|---|
| 18 plastic tables | 1 printer stand |
| 50 fold out chairs | 4 cubicles |
| 1 refrigerator | 4 phones |
| 1 microwave | 3 monitors |
| 1 cookie oven | 3 PC's |
| 2 plants | 4 trash cans |
| 1 phone | 4 office chairs |
| 2 trash cans | 2 mouse |
| 1 podium | 1 set of speakers |

**Exhibit A - Furniture Fixtures and Equipment**
(see 12. Special Provisions for Commercial Contract for the Sale of Property
Located at 14420 W. Sylvanfield, Houston, TX 77014)

**Hall**
1 file cabinet (3 drawer)

**Accounting**
1 plant
2 cubicles
2 phones
2 office chairs
2 trash cans
2 phones
2 printers
2 monitors
1 PC
4 file cabinets (4 drawer)
1tall file cabinet (2 door)
2 mouse
2 keyboards
1 set speakers to monitor

**Back Accounting Area**
3 cubicles
3 phones
3 office chairs
1 coat rack
3 monitors
3 mouse
3 PC's
3 keyboards
5 file cabinets (4 drawer)
2 trash cans

**Office**
1 desk
1 office chair
2 guest chairs
1 phone
1 monitor w/ speakers
1 keyboard
1 mouse
1 trashcan
1 printer
1 stand up lamp
1 plant
1 PC
1 bookshelf (2 shelves)
1 large thumb tack board

**Downstairs Kitchen**
1 shredder
1 microwave
1 refrigerator
2 tall bookshelves (5 shelves)
1 phone
1 plastic table
1 small desk
1 trash can

**Executive Office**
2 office desks
2 tall book shelves
1 short book shelf
1 leather couch
1 office chair
2 sitting chairs
1 round table
2 working chairs
2 plants
1 large file cabinet
1 small file cabinet
1 printer table
1 lamp
1 printer table
1 monitor
1 PC
1 keyboard
1 mouse
1 phone

**Office**
1 large L shaped desk
1 file cabinet
1 large bookshelf
1 office chair
2 guest chairs
1 painting
1 PC
1 keyboard
1 mouse
1 large printer
1 phone

**Exhibit A - Furniture Fixtures and Equipment**
(see 12. Special Provisions for Commercial Contract for the Sale of Property
Located at 14420 W. Sylvanfield, Houston, TX 77014)

**Small Conference Room**
4 plants
1 phone
8 conference chairs
1 oval conference table
2 small circle tables
1 large Harris County map on wall

**Office**
1 desk
1 office chair
1 guest chair
1 monitor
1 PC
2 printers
1 phone
1 bookshelf (2 shelves)
1 plant
1 trashcan

**Upstairs Kitchen**
1 refrigerator
1 microwave
1 folding table
1 shredder
1 printer table
1 plastic cart
1 phone
1 printer

**Executive Office**
2 office desks
1 office chair
1 lamp
3 guest chairs
3 plants
1 round table
1 tall book shelf
2 filing cabinets
1 monitor
1 PC
1 keyboard
1 printer
1 mouse

**Executive Office**
2 desks
1 monitor
1 keyboard
1 printer
1 wood file cabinet
1 round table
2 cloth chairs
2 nice guest chairs
1 lamp
4 plants
1 file cabinet
1 coat rack
1 phone

**Upstairs Conference Room**
3 plants
1 flower vase
1 large conference table
11 conference chairs
1 black leather chair
2 art 1 TV
1 phone

**Upstairs Common Area**
1 large mirror furniture
4 plants

**Working Room**
5 plants
1 round table
1 office chair
1 guest chair
1 phone

**Small Office Upstairs**
1 L shaped desk
1 office chair
1 monitor
1 PC
1 keyboard
1 phone
1 guest chair
2 file cabinets

**Exhibit A - Furniture Fixtures and Equipment**

(see 12. Special Provisions for Commercial Contract for the Sale of Property
Located at 14420 W. Sylvanfield, Houston, TX 77014)

**<u>Office</u>**
2 office desks
1 office chair
4 guest chairs
1 round table
1 lamp
1 plant
1 file cabinet
2 printers
1 monitor
1 keyboard
1 PC
1 mouse
1 phone

**<u>Building Break Room</u>**
2 paintings
2 plants
1 refrigerator
1 microwave
4 tables
12 chairs

**<u>Vice President's Office</u>**
1 monitor
1 office chair
2 desks
1 sofa
4 paintings
1 phone
1 printer
4 plants

**<u>IT Room</u>**
1 server
1 chair
3 printers
1 phone
3 keyboards
6 PC's
2 rolling racks (tables)
3 monitors
extra comp. equipment

**<u>Upstairs Sitting</u>**
2 lamps
1 black leather couch
2 black leather sitting chairs
1 mirror
1 painting
6 plants
1 end table
1 coffee table

**<u>Downstairs Common Area</u>**
4 paintings
22 plants

**<u>Amidee Realty</u>**
1 secretary desk
3 office chairs
3 office desks
1 guest chair
3 cubicles
1 cubical chair
2 book shelves
1 file cabinet
5 small file cabinets

**<u>President's Office</u>**
1 circle glass table
4 chairs
1 leather couch
2 desks
1 office chair
1 phone
4 plants
1 monitor
1 printer
1 painting

**Exhibit A - Furniture Fixtures and Equipment**
(see 12. Special Provisions for Commercial Contract for the Sale of Property
Located at 14420 W. Sylvanfield, Houston, TX 77014)

<u>**Amidee Foundation**</u>
1 oval conference table
6 leather chairs
1 mirror
1 coat rack
3 cubicles
5 sitting chairs
8 office chairs
9 phones
6 desks
9 plants
1 printer
6 (5 shelf) bookcases
4 monitors
4 mouse
6 keyboards
5 PC's
1 bookshelf w/2 drawers

**Shortened Service List**
**Amidee Capital Group Inc.**
**Case No. 10-20041**
**Jointly Administered**

Amidee Capital Group, Inc.
14420 W. Sylvanfield, Ste. 100
Houston, TX  77014

Matthew S. Okin
Sara Mya Patterson
1113 Vine Street, Suite 201
Houston, Texas 77002
spatterson@oakllp.com

United States Trustee's Office
606 N. Carancahua Street, Suite 1107
Corpus Christi, TX 78476

Lone Star Bank
Mathew Melvin
Asst Vice President
952 Echo Lane, Suite 100
Houston, TX  77024
MMelvin@LSBTexas.com

National Guardian Life Insurance Co
Robert A Mucci
Two East Gilman St
Madison, WI  53703
ramucci@nglic.com
McNeidinger@nglic.com
mjdrew@nglic.com

NCN Lending LLC
Thomas J Conwell
P.O. Box 411691
Kansas City, MO  64141-1691
tconwell@usrealtycapital.com

Keith M. Aurzada
John C. Leininger
BRYAN CAVE LLC
2200 Ross Avenue, Ste. 3300
Dallas, TX  75201
keith.aurzada@bryancave.com
John.leininger@bryancave.com

Sterling Bank
John Murphy
Commercial Lending Group
2401 Fountainview, Suite 100
Houston, TX  77057
john.murphy@banksterling.com

Danny W. Looney, P.C.
3838 Oak Lawn Ave., Ste. 910
Dallas, TX  75219

First Access Capital Corp
34601 E. Shores Rd.
Lone Jack, MO  64070

Leo Vasquez
Tax Assessor-Collector
P.O. Box 4663
Houston, TX  77210-4663

Fidelity National Property Ins.
801 94th Avenue N., Ste. 110
St. Petersburg, FL  33702

Elizabeth Parker
Dba All Bright Janitorial
03 Phillips Drive
Los Lunas, NM  87031

Sherrie Malone
3103 Lakes of Katy Lane
Katy, TX  77493

Parkwood of Northchase
14420 W. Sylvanfield
Houston, TX  77014

Pasadena ISD
P.O. Box 1318
Pasadena, TX  77501-1318

Aicco, Inc.
P.O. Box 200455
Dallas, TX  75320

The Hartford
P.O. Box 2907
Hartford, CT  06104-2907

Maintenance Supply
P.O. Box 203601
Houston, TX  77216-3601

Dell Commercial Credit
P.O. Box 689020
Des Moines, IA  50368

City of Houston
P.O. Box 1560
Houston, TX  77521

Bank of America
P.O. Box 15710
Wilmington, DE  19886-5710

Dell Commercial Credit
P.O. Box 689020
Des Moines, IA  50368

Nueces County Tax Assessor & Collector
901 Leopard, Room 301
Corpus Christi, TX  78401

Texas City ISD-Tax Office
Tax Assessor-Collector
P.O. Box 1150
Texas City, TX  77592

US Bank Office Equipment
1310 Madrid St., Ste. 101
Marshall, MN  56258

Criterion Brock
P.O. Box 800273
Houston, TX  77280-0273

StarTex Power
P.O. Box 4802
Houston, TX  77210

IRS-Corpus Christi
STOP #5026AUS
300 E. 8th Street
Austin, TX  78701

Ted L. Walker
Adam R. Fracht
THE WALKER FIRM
402 Main Street, 9th Floor
Houston, TX  77002
tlwalkerlaw@aol.com

Joseph G. Epstein
WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
jepstein@winstead.com

Darla C. Carlisle
Weycer, Kaplan, Pulaski & Zuber, P.C.
11 Greenway Plaza, Suite 1400
Houston, Texas 77046
dcarlisle@wkpz.com

Charles R. Sterbach
Assistant United States Trustee
Office of the United States Trustee
606 N. Carancahua, Suite 1107
Corpus Christi, TX 78476
Charles.R.Sterbach@usdoj.gov

Ronald A. Simank
Schauer & Simank, P.C.
615 North Upper Broadway, Suite 2000-MSC 159
Corpus Christi, Texas 78477
rsimank@cctxlaw.com

Patrick L. Hughes
Haynes and Boone LLP
1221 McKinney, Suite 2100
Houston TX 77010
Facsimile No.: 713-547-2600
patrick.hughes@haynesboone.com

Pasadena ISD
Dexter D. Joyner
4701 Preston Ave.
Pasadena, texas 77505
Fax: 281-991-6201

GE Money Bank
c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131
claims@recoverycorp.com

Richard Hanna
10701 Lomas NE, Suite 201
Albuquerque, NM 87112
rhanna@richardhanna.com

J. David Dickson
Beard Kultgen Brophy Bostwick & Dickson, LLP
5400 Bosque Blvd., Suite 301
Waco, Texas 76710
Dickson@thetexasfirm.com

Patricia Reed Constant
One Shoreline Plaza
800 North Shoreline Blvd., Ste. 320 S
Corpus Christi, Texas 78401

Spring ISD
c/o Perdue Brandon, Fielder Collins & Mott LLP
Yolanda M. Humphrey
1235 North Loop West, Suite 600
Houston, Texas 77008
Yhumphrey@pbfcm.com