IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-20041 |
| | § | |
| AMIDEE CAPITAL GROUP, INC., ET AL., | § | CHAPTER 11 |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

**EMERGENCY APPLICATION FOR AN ORDER PURSUANT TO SECTION 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF DANNY R. THOMPSON AS ACCOUNTANT FOR THE DEBTORS, *NUNC PRO TUNC* TO MARCH 22, 2010**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN **21 DAYS** OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THIS MOTION MAY BE SET FOR EMERGENCY CONSIDERATION.  YOU MAY HAVE LESS THAN 21 DAYS TO RESPOND.

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Amidee Capital Group, Inc. ("ACG") on behalf of itself and its affiliates, all debtors and debtors in possession in the above referenced bankruptcy proceedings, filing this Emergency Application for an Order Pursuant to Section 327(a) and 328 (a) of the Bankruptcy Code Authorizing the Employment and Retention of Danny R. Thompson as Accountant for the

Debtors *Nunc Pro Tunc* to March 22, 2010 ("the "Application") and in support hereof, respectfully states as follows:

## I.
## JURISDICTION

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested may be granted in accordance with the provisions of 11 U.S.C. §§ 327(a), 328(a) and 1107(a) and (b).

## II.
## BACKGROUND

3. On January 4, 2010 (the "Corpus Petition Date"), Amidee 2006 Preferred-Corpus, Ltd. ("Amidee Corpus"), a subsidiary of ACG, filed a voluntary petition for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court"). On January 17, 2010 (the "Petition Date"), ACG and nine of its other subsidiaries also filed voluntary petitions for relief under chapter 11 in this Court.[1] On January 21, 2010, the Court approved an order directing that all of the Debtors' cases be jointly administered under case no. 10-20041. The Debtors' bankruptcy cases are collectively referred to as the "Reorganization Cases."

---

[1] The ACG subsidiaries who filed bankruptcy petitions on January 17, 2010, were: Amidee 2004-I Tax Deed and Certificate Investment Program, Ltd. ("Amidee 2004 Tax"); Amidee 2005-II Tax Deed Investment Program, Ltd. ("Amidee 2005 Tax"); Amidee 2006-III Tax Deed and Real Estate Investment Program, Ltd. ("Amidee 2006 Tax"); Amidee 2006 Preferred Real Estate Income Program, Ltd. ("Amidee 2006 Preferred"); Amidee 2006 Commercial Real Estate Income Program, Ltd. ("Amidee 2006 Commercial"); Amidee 2007-I CRE Income Fund, Ltd. ("Amidee 2007"); Amidee 2008-I CRE Income Fund, Ltd. ("Amidee 2008"); Amidee 2009-I CRE Income Fund, Ltd. ("Amidee 2009"); and Amidee Oak Pointe Apartments, LLC ("Amidee Oak Pointe") (collectively with Amidee Corpus, the "Subsidiary Debtors" and with ACG, the "Debtors").

2

4.      Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors remain in possession of their property and are managing their businesses as debtors in possession. No trustee or examiner has been appointed in the Reorganization Cases.

5.      ACG is a Texas corporation formed in 2003 to acquire, renovate, operate and resell real property in Texas and throughout the United States. Initially, ACG focused its operations on the purchase of tax lien certificates on real property in Houston and the surrounding area. The "tax deed" properties acquired by ACG were purchased using funds raised pursuant to private placements of capital raised by ACG through the sale of limited partnership interests in Subsidiary Debtors—Amidee 2004 Tax, Amidee 2005 Tax and Amidee 2006 Tax. Much of the real property ultimately acquired by ACG using the capital raised for these tax deed programs was either raw land or single family homes.

6.      In 2006, ACG expanded its investment activities beyond raw land and single family homes and began actively looking to acquire and operate apartment complexes and office buildings. To fund these new acquisitions, in 2006, ACG raised additional capital through the sale of limited partnership interests in two additional limited partnerships—Amidee 2006 Preferred and Amidee 2006 Commercial. In 2007, 2008 and 2009, ACG formed an additional limited partnership each year and raised capital through the sale of the limited partnership interests in those entities—Amidee 2007, Amidee 2008 and Amidee 2009.

7.      In the six years from 2004 to 2009, ACG raised approximately $24 million through the sale of limited partnership interests. Combined, approximately 350 different entities or individuals own limited partnership interests in one or more of the Subsidiary Debtors. While

the number and identity of the limited partners vary for each of the Subsidiary Debtors, ACG is the sole general partner for each Subsidiary Debtor.[2]

8. In addition to the Subsidiary Debtors, ACG owns significant stakes in certain non-debtor entities. Specifically, ACG owns 100% of the outstanding shares of Amidee Hotels & Resorts, Inc., a Texas corporation, that owns and operates the Amidee Hotel Niagara in Niagara Falls, New York and the Parkway Plaza Hotel and Convention Center in Casper, Wyoming.[3] In addition, ACG is the managing member of the Atrium LLC, a New Mexico limited liability company that owns the Atrium office building in Albuquerque, New Mexico. While these non-debtor entities are ultimately controlled by ACG and share some of the liquidity issues that triggered the bankruptcy filing of the Debtors, ACG determined that chapter 11 filings for these entities, at this time, would not be beneficial for those entities, their creditors or the properties that they own. ACG, however, intends to continue to manage these entities and their properties during the course of these Reorganization Cases.

9. In addition to the funds raised from the sale of limited partnership interests, ACG has in the past obtained funds for the acquisition, renovation and operation of the various properties it and its subsidiaries own through secured loans from various lending institutions and individuals. As of the Petition Date, ACG or one of the Subsidiary Debtors was the primary borrower on approximately $10.5 million in loans secured by various real property owned by the Debtors. In addition to these direct obligations of some of the Debtors, some of ACG's non-

---

[2] Amidee Oak Pointe is actually an LLC, and ACG is therefore its sole managing member, rather than general partner. Amidee Oak Pointe and Amidee Corpus are special purpose entities formed to own a single piece of real property, and therefore third party investors do not own limited partnership interests (or non-managing membership interests) in these entities. Instead, all of Amidee Corpus' limited partnership interests are owned by Amidee 2008 and all of the non-managing membership interests in Amidee Oak Pointe are owned by Amidee 2007.

[3] Amidee Hotel Niagara is owned by Amidee Hotel Niagara, LLC and Parkway Plaza is owned by Amidee Wyoming, LLC both of which are 100% owned by Amidee Hotels & Resorts, Inc.

4

debtor subsidiaries are also borrowers on approximately an additional $11.5 million in secured debt.[4]

10.   ACG estimates that the portfolio consisting of the real property owned directly by one of the Debtors is worth approximately $26.5 million.  In addition, although the Atrium office building in Albuquerque, New Mexico is owned by the Atrium LLC, a non-debtor, the Debtors own 75% of the membership interests in the Atrium LLC.  ACG, the managing member of Atrium LLC, believes that the Atrium building is worth more than $2.8 million after payment of the outstanding secured debt against that property.[5]

11.   All of the apartment complexes and office buildings owned by the Debtors are managed and operated directly by ACG personnel.  ACG personnel are responsible for all aspects of the acquisition of properties as well as the marketing and eventual sale of those properties.  Because ACG manages all aspects of the Subsidiary Debtors' operations, none of the Subsidiary Debtors has its own employees.  Up until September 2009, ACG maintained a staff of approximately 30 employees and contract personnel to run the operations of ACG and all of its subsidiaries, including the Subsidiary Debtors.  In an effort to reduce its overhead, in September 2009, ACG significantly reduced its staff by eliminating all personnel except those essential to keeping the properties operating.  As of the Petition Date, ACG had 9 full time employees, and 6 contract workers.[6]

12.   During the five years from 2004 to 2009, ACG successfully managed the real estate portfolio that it and its subsidiaries had acquired.  In addition to servicing the secured debt

---

[4] ACG is a guarantor of approximately $9.6 million of this amount which was borrowed by Amidee Hotels & Resorts.

[5] Atrium LLC is the borrower and none of the Debtors has guaranteed this loan, thus it is not an obligation of the Debtors' bankruptcy estates.

[6] James T. Cook and Judith B. Cook, ACG's CEO and President, respectively, are not included in these employment numbers as they have voluntarily gone without salary since September 2009.

incurred in the acquisition and renovation of numerous properties, ACG made in excess of $7 million in interest payments and distributions to the numerous investors in the various real estate entities it manages. By mid-2009, however, a number of factors, including the overall downturn in the United States' economy and the real estate market in particular, contributed to making ACG's cash flow extremely tight. ACG and its subsidiaries began having difficulty paying ongoing operating expenses and servicing their secured debt while still making fixed distributions to limited partners in the Subsidiary Debtors. In September 2009, ACG informed the limited partners in the Subsidiary Debtors that it was suspending regular partner distributions until it could get its cash flow difficulties under control.

13. Unfortunately, the 4th quarter of 2009 did not bring improvement in the Debtors' cash flow situation. Although ACG actively marketed most of the Debtors' real estate portfolio, it was unable to locate buyers for the properties at acceptable prices. In December 2009, ACG retained Douglas J. Brickley of LECG, LLC to advise it with regard to possible restructuring options for ACG and its subsidiaries and help the Debtors to manage their worsening liquidity crisis.

14. On January 4, 2010, ACG determined that filing a bankruptcy petition for Amidee Corpus was necessary in order to prevent foreclosure the next day on the Atrium office building in Corpus Christi, Texas. Although the bankruptcy of Amidee Corpus helped to avoid the immediate emergency that triggered the initial bankruptcy filing, ACG determined that no long-term solution to its liquidity crisis was likely without an opportunity to restructure the Debtors through a chapter 11 bankruptcy process. Thus, on January 16, 2010, ACG's board of directors authorized chapter 11 filings for the Debtors and appointed Douglas Brickley as the Chief Restructuring Officer for ACG and the Subsidiary Debtors. Pursuant to the board's resolution,

6

Mr. Brickley has been given exclusive control of the Debtors' operations in bankruptcy and the restructuring effort. ACG believes that the bankruptcy filings and the experienced leadership of Mr. Brickley will provide the Debtors with the best chance of reorganizing their operations and paying the greatest possible return to the Debtors' creditors and equity security holders.

### III.
### RETENTION OF DANNY R. THOMPSON

15. By this Application, the Debtors respectfully request entry of an order authorizing the retention of Danny R. Thompson ("Thompson") as Accountant for the Debtors to prepare all of the Debtors' 2009 tax returns and form K-1 investor statements as provided in the Letter Agreement attached hereto and incorporated herein as **Exhibit A.** The Debtors wish to retain Thompson pursuant to the terms set forth in the Letter Agreement. The Debtors have selected Thompson to serve as accountant because of his extensive experience in preparing tax returns and because of his prior dealings with the Debtors which make him uniquely qualified to timely complete the tax returns. The term of the engagement will run from March 22, 2010 through completion of the tax returns which the Debtors anticipate will be prior to April 15, 2010.

16. The Debtors respectfully submit that employment of Thompson as their Accountant is necessary and appropriate.

### IV.
### DANNY R. THOMPSON IS "DISINTERESTED"

17. Under § 327(a) of the Bankruptcy Code, the trustee or debtor in possession is authorized to employ one or more professional persons that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as that term is defined in § 101(14) of the Bankruptcy Code, to represent or assist the debtor in possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. §§ 101(14) and 327(a).

18. To the best of the Debtors' knowledge, Thompson is not an insider of the Debtors, nor does he have any direct or indirect relationship to, connection with, or interest in the Debtors that would make his interests materially adverse to the interests of the estates or of any class of creditors or equity security holders. As set out in the Declaration of Danny R. Thompson, Thompson does have a prepetition claim against ACG for $9,275.00. Since Thompson is only being employed for the limited purpose of preparing 2009 tax documents, the Debtors do not believe that Thompson's status as a prepetition creditor gives him an interest adverse to the estate on matters for which he is being employed. Except as set forth in the Declaration of Danny R. Thompson which is attached to and incorporated to this Application as **Exhibit B**, to the best of the Debtors' knowledge, Thompson does not have any connections with the Debtors, their creditors any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. Based upon the Affidavit, the Debtors believe that Thompson is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code, as modified by § 1107(b) and is therefore qualified to be employed by ACG and its Subsidiary Debtors pursuant to § 327(a) of the Bankruptcy Code.

## V.
## COMPENSATION

19. Further, § 328(a) provides that the trustee or debtor may employ a professional person under section 327 or 1103 on any reasonable terms and conditions of employment, including on retainer, an hourly basis, on a fixed or percentage fee basis or on a contingent fee basis. 11 U.S.C. § 328(a). Thompson's compensation will be a flat-fee of $1,000 per each tax return completed. The Debtors respectfully submit that the proposed flat-fee arrangement is reasonable and customary for matters of this type.

8

20.     The Debtors request that Thompson not be required to file a fee application for the above compensation. Instead, once Thompson completes the tax returns, the Debtors will promptly pay him the fees pursuant to this Motion and the current cash collateral budget.

21.     The Debtors request approval of this application *nunc pro tunc* to March 22, 2010 as provided by the terms of Bankruptcy Local Rule 2014-1(b).

## VI.
## PRAYER

WHEREFORE, the Debtors request that this Court enter an order approving the retention of Thompson as real accountant for the Debtors in this proceeding and granting such other and further relief as the Court may deem just and proper.

Respectfully submitted on the 15th day of April, 2010.

**OKIN ADAMS & KILMER LLP**

By:     /s/ *Sara Mya Patterson*
Matthew S. Okin (TB# 00784695)
mokin@oakllp.com
Sara Mya Patterson (TB# 24062938)
spatterson@oakllp.com
1113 Vine St. Suite 201
Houston, TX  77002
Tel:  (713) 228-4100
Fax:  (888) 865-2118

**ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing Application was served upon the parties on the attached service list via United States Mail, postage prepaid and/or via e-mail on the 15th day of April, 2010.

/s/ *Sara Mya Patterson*
Sara Mya Patterson

9

**DANNY R THOMPSON**
CERTIFIED PUBLIC ACCOUNTANT
813 AVENUE C, KATY, TEXAS 77493
TELEPHONE 281-391-2314
FAX NUMBER 281-391-2314

Mr. Douglas Brickley
Chief Restructuring Officer
Amidee 2006 Preferred Corpus Ltd
Amidee Capital Group Inc.
Amidel 2006 Preferred Real Estate Income Program, Ltd.
Amidee Oak Pointe Apartments LLC
Amidee 2004-I Tax Deed and Certificate of Investment Program Ltd.
Amidee 2005-II Tax Deed Investment Program Ltd.
Amidee 2006-III Tax Deed and Real Estate Investment Program, Ltd
Amidee 2006 Commercial Real Estate Income Program Ltd,
Amidee 2007-I CRE Income Fund, Ltd
Amidee 2008-I CRE Income Fund, Ltd
Amidee 2009 -I CRE Income Fund, Ltd

Dear Mr. Brickley:

This letter is to confirm our understanding of the terms and objectives of our engagement and the nature and limitations of the services we will provide.

We will prepare your 2009 Federal Income Tax Returns, (collectively, the "returns") with supporting schedules, and perform related research as considered necessary. This engagement pertains only to the 2009 tax year and our responsibilities do not include preparation of any other tax returns that may be due to any taxing authority. Our engagement will be complete upon the delivery of the completed returns to you. Thereafter, you will be solely responsible to file the returns with the appropriate taxing authorities.

If, during our work, we discover information that affects your prior-year tax returns, we will make you aware of the facts. However, we cannot be responsible for identifying all items that may affect prior-year returns. If you become aware of such information during the year, please contact us to discuss the best resolution of the issue.

Your returns may be selected for review by one or more than one taxing authority. Any proposed adjustments by the examining agent are subject to certain rights of appeal. In the event of such

Exhibit A

government tax examination, if you wish to have us represent you during the examination and/or during any appeal, please make that request of us in writing. If we agree to represent you in that regard, such representation will be the subject of, and governed by, a separate engagement letter.

Certain communications involving tax advice may be privileged and not subject to disclosure to the IRS. By disclosing the contents of those communications to anyone, or by turning over information about those communications to the government, you (or other employees) may be waiving this privilege. To protect this right to privileged communication, please consult with us or the corporation's attorney prior to disclosing any information about our tax advice.

Our engagement cannot be relied upon to disclose errors, fraud, or other illegal acts that may exist. However, we will inform you of any material errors that come to our attention and any fraud that comes to our attention. We will also inform you of any other illegal acts that come to our attention, unless clearly inconsequential. Our responsibility as tax preparer is limited to the tax period specified above and does not extend to any later periods of which we are not engaged as tax preparers.

Our services are not designed to provide assurance on internal controls or to identify reportable conditions, that is, significant deficiencies or material weaknesses in the design or operation of internal control. Accordingly, we have no responsibility to identify and communicate significant deficiencies or material weaknesses in your internal controls as part of this engagement, and our engagement cannot be relied upon to disclose the same. However, during the procedures, if we become aware of such reportable conditions, we will communicate them to you.

You are responsible for adopting sound accounting policies, for maintaining an adequate and efficient accounting system, for safeguarding assets, for authorizing transactions, for retaining supporting documentation for those transactions, and for devising a system of internal controls that will, among other things, help assure the preparation of proper income tax returns. Furthermore, you are responsible for management decisions and functions, for designating a competent employee to oversee any of the services we provide, and for evaluating the adequacy and results of those services. You have the final responsibility for the income tax returns and, therefore, should review them carefully before you sign and file them.

You are responsible for the design and implementation of programs and controls to prevent and detect fraud, and for informing us about all known or suspected fraud affecting the Company involving (a) management (b) employees who have significant roles in internal control, and (c) others where the fraud could have a material effect on the financial statements. You are also responsible for informing us of your knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the entity complies with applicable laws and regulations.

In order for us to complete this engagement, and to do so efficiently, we require unrestricted access to the following documents and individuals within your company: Trial Balances and Balance Sheet and Profit and Loss Statements. Specifically, we must receive sufficient information from which to prepare your returns within a reasonable period of time prior to the

Exhibit A

applicable filing deadline, specifically, on or before March 20, 2010. Any failure to provide such cooperation, and to do so on a timely basis, will impede our services, and may require us to pursue an extension of the due date of your returns, suspend our services or withdraw from the engagement.

The law provides various penalties and interest that may be imposed when taxpayers understate their tax liability. You acknowledge that any such understated tax, and any imposed interest and penalties, are your responsibility, and that we have no responsibility in that regard. If you would like information on the amount or circumstances of these penalties, please contact me.

We may encounter instances where the tax law is unclear, or where there may be conflicts between the taxing authorities' interpretations of the law and other supportable positions. In those instances, we will outline for you each of the reasonable alternative courses of action, including the risks and consequences of each such alternative. In the end, we will adopt, on your behalf, the alternative which you select after having considered the information provided by us.

Without disclosure in the return itself of the specific position taken on a given issue, we must have a reasonable belief that it is more likely than not that the position will be held to be the correct position upon examination by taxing authorities. If we do not have that reasonable belief, we must be satisfied that there is at least a reasonable basis for the position, and in such a case the position must be formally disclosed on Form 8275 or 8275-R, which form would be filed as part of the return. If we do not believe there is a reasonable basis for the position, either the position cannot be taken or we cannot sign the return. In order for us to make these determinations, we must rely on the accuracy and completeness of the relevant information you provide to us, and, in the event we and/or you are assessed penalties due to our reliance on inaccurate, incomplete, or misleading information you supplied to us (with or without your knowledge or intent), you will indemnify us, defend us and hold us harmless as to those penalties.

Our fees for this engagement are not contingent on the results of our services. Rather, our fees for this engagement, including preparation of your returns and any representation of your interests during an examination by a taxing authority and/or any subsequent appeal, will be $1,000.00 per income tax return.

If we elect to terminate our services for nonpayment, or for any other reason provided for in this letter, our engagement will be deemed to have been completed upon written notification of termination, even if we have not completed your return. You will be obligated to compensate us for all time expended, and to reimburse us for all of our out-of-pocket costs, through the date of termination.

You should retain all the documents, canceled checks and other data that form the basis of income and deductions. These may be necessary to prove the accuracy and completeness of the returns to a taxing authority. You have the final responsibility for the income tax returns and, therefore, you should review them carefully before you sign them.

Exhibit A

In connection with this engagement, we may communicate with you or others via email transmission. As emails can be intercepted and read, disclosed, or otherwise used or communicated by an unintended third party, or may not be delivered to each of the parties to whom they are directed and only to such parties, we cannot guarantee or warrant that emails from us will be properly delivered and read only by the addressee. Therefore, we specifically disclaim and waive any liability or responsibility whatsoever for interception or unintentional disclosure of emails transmitted by us in connection with the performance of this engagement. In that regard, you agree that we shall have no liability for any loss or damage to any person or entity resulting from the use of email transmissions, including any consequential, incidental, direct, indirect, or special damages, such as loss of revenues or anticipated profits, or disclosure or communication of confidential or proprietary information.

It is our policy to retain engagement documentation for a period of seven years, after which time we will commence the process of destroying the contents of our engagement files. To the extent we accumulate any of your original records during the engagement, those documents will be returned to you promptly upon completion of the engagement, and you will provide us with a receipt for the return of such records. The balance of our engagement file, other than a copy of your income tax return, which we will provide to you at the conclusion of the engagement, is our property, and we will provide copies of such documents at our discretion and if compensated for any time and costs associated with the effort.

In the event we are required to respond to a subpoena, court order or other legal process for the production of documents and/or testimony relative to information we obtained and/or prepared during the course of this engagement, you agree to compensate us at our hourly rates, as set forth above, for the time we expend in connection with such response, and to reimburse us for all of our out-of-pocket costs incurred in that regard.

In the event that we are or may be obligated to pay any cost, settlement, judgment, fine, penalty, or similar award or sanction as a result of a claim, investigation, or other proceeding instituted by any third party, and if such obligation is or may be a direct or indirect result of any inaccurate, incomplete, or misleading information that you provide to us during the course of this engagement (with or without your knowledge or intent), you agree to indemnify us, defend us (with counsel of our choosing), and hold us harmless as against such obligation.

You agree that any dispute (other than our efforts to collect an outstanding invoice) that may arise regarding the meaning, performance or enforcement of this engagement or any prior engagement that we have performed for you, will, prior to resorting to litigation, be submitted to mediation, and that the parties will engage in the mediation process in good faith once a written request to mediate has been given by any party to the engagement. Any mediation initiated as a result of this engagement shall be administered within the county of Harris County Texas by a mutually agreed upon Mediator, according to its mediation rules, and any ensuing litigation shall be conducted within said county, according to Texas law. The results of any such mediation shall be binding only upon agreement of each party to be bound. The costs of any mediation proceeding shall be shared equally by the participating parties.

Any litigation arising out of this engagement, except actions by us to enforce payment of our professional invoices, must be filed within one year from the completion of the engagement,

notwithstanding any statutory provision to the contrary. In the event of litigation brought against us, any judgment you obtain shall be limited in amount, and shall not exceed the amount of the fee charged by us, and paid by you, for the services set forth in this engagement letter. In no event will we be responsible for any additional tax that may be assessed against you, or any interest that may be assessed against you with respect to such additional tax.

This engagement letter is contractual in nature, and includes all of the relevant terms that will govern the engagement for which it has been prepared. The terms of this letter supersede any prior oral or written representations or commitments by or between the parties. Any material changes or additions to the terms set forth in this letter will only become effective if evidenced by a written amendment to this letter, signed by all of the parties.

If, after full consideration and consultation with counsel if so desired, you agree that the foregoing terms shall govern this engagement, please sign this letter in the space provided and return the original signed letter to me, keeping a fully-executed copy for your records.

Thank you for your attention to this matter, and please contact me with any questions that you may have.

Very truly yours,

Danny R. Thompson CPA

**ACCEPTED AND AGREED:**

By: Mr. Douglas Brickley  
Its: Chief Restructuring Officer

Date: 3-22-10

Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-20041 |
| | § | |
| AMIDEE CAPITAL GROUP, INC., ET AL., | § | CHAPTER 11 |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

### DECLARATION OF DANNY R. THOMPSON
### PURSUANT TO BANKRUPTCY RULES 2014 AND 2016(b) AND
### SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE

Danny Thompson, a certified public accountant, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. My name is Danny Thompson. I am a certified public accountant with my own practice. I am over 18 years of age and fully competent to make this Declaration. I submit this Declaration in support of the Emergency Application for an Order Pursuant to Section 327(a) and 328 (a) of the Bankruptcy Code Authorizing the Employment and Retention of Danny R. Thompson as Accountant for the Debtors *Nunc Pro Tunc* to March 22, 2010 (the "Application") filed by the Debtors in the above-captioned cases.

2. I have been in business for 37 years, and I specialize in business accounting.

3. I had a prepetition relationship with Debtors, as I had prepared tax returns for the Debtors in the past. On the Petition Date, I was owed $9,275.00 by the Debtors for prepetition services provided to the Debtors.

4. To the best of my knowledge and belief, I do not represent or have any interest adverse to the Debtors or their estates in the matters upon which I have been engaged by the Debtors. I am, therefore, a disinterested person under § 101(14) of title 11 of the United States Code (the "Bankruptcy Code"). I have been provided a service list in this Bankruptcy Case listing the names of the Debtors' creditors and their attorneys. I have compared the service list

Exhibit B

against my internal client list to determine whether I have any connection to the parties listed. Except as otherwise disclosed below, based upon my review of the list provided, I do not have any connections with the Debtors, their creditors, any party in interest in these cases, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

5. No promises have been received by me as to compensation in connection with this case, other than in accordance with the provisions of the Bankruptcy Code and the Letter Agreement attached as Exhibit A to the Debtors' Application.

6. I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed this 15 day of April, 2010.

_____
Danny R. Thompson

**Shortened Service List**
**Amidee Capital Group Inc.**
**Case No. 10-20041**
**Jointly Administered**

Amidee Capital Group, Inc.
14420 W. Sylvanfield, Ste. 100
Houston, TX  77014

Matthew S. Okin
Sara Mya Patterson
1113 Vine Street, Suite 201
Houston, Texas 77002
spatterson@oakllp.com

United States Trustee's Office
606 N. Carancahua Street, Suite 1107
Corpus Christi, TX 78476

Lone Star Bank
Mathew Melvin
Asst Vice President
952 Echo Lane, Suite 100
Houston, TX  77024
MMelvin@LSBTexas.com

National Guardian Life Insurance Co
Robert A Mucci
Two East Gilman St
Madison, WI 53703
ramucci@nglic.com
McNeidinger@nglic.com
mjdrew@nglic.com

NCN Lending LLC
Thomas J Conwell
P.O. Box 411691
Kansas City, MO  64141-1691
tconwell@usrealtycapital.com

Keith M. Aurzada
John C. Leininger
BRYAN CAVE LLC
2200 Ross Avenue, Ste. 3300
Dallas, TX  75201
keith.aurzada@bryancave.com
John.leininger@bryancave.com

Sterling Bank
John Murphy
Commercial Lending Group
2401 Fountainview, Suite 100
Houston, TX  77057
john.murphy@banksterling.com

Danny W. Looney, P.C.
3838 Oak Lawn Ave., Ste. 910
Dallas, TX  75219

First Access Capital Corp
34601 E. Shores Rd.
Lone Jack, MO  64070

Leo Vasquez
Tax Assessor-Collector
P.O. Box 4663
Houston, TX  77210-4663

Fidelity National Property Ins.
801 94th Avenue N., Ste. 110
St. Petersburg, FL  33702

Elizabeth Parker
Dba All Bright Janitorial
03 Phillips Drive
Los Lunas, NM  87031

Sherrie Malone
3103 Lakes of Katy Lane
Katy, TX  77493

Parkwood of Northchase
14420 W. Sylvanfield
Houston, TX  77014

Pasadena ISD
P.O. Box 1318
Pasadena, TX  77501-1318

Aicco, Inc.
P.O. Box 200455
Dallas, TX  75320

The Hartford
P.O. Box 2907
Hartford, CT  06104-2907

Maintenance Supply
P.O. Box 203601
Houston, TX  77216-3601

Dell Commercial Credit
P.O. Box 689020
Des Moines, IA  50368

City of Houston
P.O. Box 1560
Houston, TX  77521

Bank of America
P.O. Box 15710
Wilmington, DE  19886-5710

Dell Commercial Credit
P.O. Box 689020
Des Moines, IA  50368

Nueces County Tax Assessor & Collector
901 Leopard, Room 301
Corpus Christi, TX  78401

Texas City ISD-Tax Office
Tax Assessor-Collector
P.O. Box 1150
Texas City, TX  77592

US Bank Office Equipment
1310 Madrid St., Ste. 101
Marshall, MN  56258

Criterion Brock
P.O. Box 800273
Houston, TX  77280-0273

StarTex Power
P.O. Box 4802
Houston, TX  77210

IRS-Corpus Christi
STOP #5026AUS
300 E. 8th Street
Austin, TX  78701

Ted L. Walker
Adam R. Fracht
THE WALKER FIRM
402 Main Street, 9th Floor
Houston, TX  77002
tlwalkerlaw@aol.com

Joseph G. Epstein
WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, Texas 77002
jepstein@winstead.com

Darla C. Carlisle
Weycer, Kaplan, Pulaski & Zuber, P.C.
11 Greenway Plaza, Suite 1400
Houston, Texas 77046
dcarlisle@wkpz.com

Charles R. Sterbach
Assistant United States Trustee
Office of the United States Trustee
606 N. Carancahua, Suite 1107
Corpus Christi, TX 78476
Charles.R.Sterbach@usdoj.gov

Ronald A. Simank
Schauer & Simank, P.C.
615 North Upper Broadway, Suite 2000-MSC 159
Corpus Christi, Texas 78477
rsimank@cctxlaw.com

Patrick L. Hughes
Haynes and Boone LLP
1221 McKinney, Suite 2100
Houston TX 77010
Facsimile No.: 713-547-2600
patrick.hughes@haynesboone.com

Pasadena ISD
Dexter D. Joyner
4701 Preston Ave.
Pasadena, texas 77505
Fax: 281-991-6201

GE Money Bank
c/o Recovery Management Systems Corp.
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131
claims@recoverycorp.com

Richard Hanna
10701 Lomas NE, Suite 201
Albuquerque, NM 87112
rhanna@richardhanna.com

J. David Dickson
Beard Kultgen Brophy Bostwick & Dickson, LLP
5400 Bosque Blvd., Suite 301
Waco, Texas 76710
Dickson@thetexasfirm.com

Patricia Reed Constant
One Shoreline Plaza
800 North Shoreline Blvd., Ste. 320 S
Corpus Christi, Texas 78401

Spring ISD
c/o Perdue Brandon, Fielder Collins & Mott LLP
Yolanda M. Humphrey
1235 North Loop West, Suite 600
Houston, Texas 77008
Yhumphrey@pbfcm.com