IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-20041 |
| | § | |
| AMIDEE CAPITAL GROUP, INC., ET AL., | § | CHAPTER 11 |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

**DEBTORS' OBJECTION TO AD HOC AMIDEE LIMITED
PARTNERS COMMITTEE'S APPLICATION FOR ALLOWANCE
OF SUBSTANTIAL CONTRIBUTION CLAIM AND/OR APPLICATION
FOR ADMINISTRATIVE EXPENSE CLAIM**
(Relates to Docket No. 328)

COMES NOW, Amidee Capital Group, Inc. ("ACG" or the "Debtor") on behalf of itself and its affiliates, all debtors and debtors in possession in the above referenced bankruptcy proceedings, and files this Objection (the "Objection") to the Ad Hoc Amidee Limited Partners Committee's Application for Allowance of Substantial Contribution Claim and/or Application for Administrative Expense Claim (the "Application") [Docket No. 328]. In support of the Objection, the Debtor respectfully represents as follows:

## I. INTRODUCTION

1. Ad Hoc Amidee Limited Partners Committee's (the "Ad Hoc Committee") seeks $85,492.43 from the Debtors' estates (defined below). The Ad Hoc Committee asserts that it is entitled payment of its fees and expenses because it allegedly provided a substantial contribution to these Reorganization Cases (defined below). However, the Ad Hoc Committee fails to articulate *any contribution*, let alone a "substantial contribution," that it made in these Reorganization Cases. (Application ¶ 13). In fact, the Ad Hoc Committee admits that its own efforts were unsuccessful. (Application ¶ 5). Therefore, the Debtors object to the Application on several grounds and request that the Court deny the relief requested in its entirety.

## II. FACTUAL BACKGROUND

2. This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On January 4, 2010 (the "Corpus Petition Date"), Amidee 2006 Preferred-Corpus, Ltd. ("Amidee Corpus"), a subsidiary of ACG, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Bankruptcy Court"). On January 17, 2010 (the "Petition Date"), ACG and nine of its other subsidiaries also filed voluntary petitions for relief under chapter 11 with the Bankruptcy Court.[1] The Debtors' bankruptcy cases are collectively referred to as the "Reorganization Cases."

4. Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors remain in possession of their property and are managing their businesses as debtors in possession. No trustee or examiner has been appointed in the Reorganization Cases.

5. On August 2, 2010, the Debtors filed their Motion for an Order: (i) Authorizing the Sale of Substantially All of the Debtors' Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, Subject to Higher or Better Offers; (ii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection With Such Sale and Determining and Adjudicating Cure Amounts With Respect to Such Contracts and Leases;

---

[1] The ACG subsidiaries who filed bankruptcy petitions on January 17, 2010, were: Amidee 2004-I Tax Deed and Certificate Investment Program, Ltd. ("Amidee 2004 Tax"); Amidee 2005-II Tax Deed Investment Program, Ltd. ("Amidee 2005 Tax"); Amidee 2006-III Tax Deed and Real Estate Investment Program, Ltd. ("Amidee 2006 Tax"); Amidee 2006 Preferred Real Estate Income Program, Ltd. ("Amidee 2006 Preferred"); Amidee 2006 Commercial Real Estate Income Program, Ltd. ("Amidee 2006 Commercial"); Amidee 2007-I CRE Income Fund, Ltd. ("Amidee 2007"); Amidee 2008-I CRE Income Fund, Ltd. ("Amidee 2008"); Amidee 2009-I CRE Income Fund, Ltd. ("Amidee 2009"); and Amidee Oak Pointe Apartments, LLC ("Amidee Oak Pointe") (collectively with Amidee Corpus, the "Subsidiary Debtors" and with ACG, the "Debtors").

(iii) Waiving the Fourteen-Day Stay Period Provided by Bankruptcy Rule 6004(h) and 6006(d); and (iv) Granting Related Relief (the "Sale Motion") [Docket No. 280]. A hearing on the Sale Motion was held on October 4, 2010.

6. On August 26, 2010, this Court approved the bid procedures submitted by the Debtors by signing Order: (i) Approving Auction and Bidding Procedures and Auction Date; (ii) Scheduling Date and Time for Sale Hearing; (iii) Approving Form and Manner of Notice of Auction and Sale Hearing; (iv) Approving Form and Manner of Service of Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (v) Granting Related Relief (the "Bid Procedures Order") [Docket No. 297]. Since the hearing on the Sale Motion, the Court has approved the sale of a majority of the Debtors' real property assets.

### III. OBJECTION

**A. The Ad Hoc Committee Did Not Make a "Substantial Contribution"**

1. Standards for a Substantial Contribution Claim

7. Section 503(b)(3)(D) of the Bankruptcy Code states:

> [T]here shall be allowed administrative expenses . . . including . . . the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . . a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title . . . .

11 U.S.C. § 503(b)(3)(D). The Ad Hoc Committee must show by a preponderance of the evidence that it made a "substantial contribution" in order to recover any fees and expenses associated with making such contribution.[2] *In re Buttes Gas & Oil Co.,* 112 B.R. 191, 193

---

[2] The Ad Hoc Committee is not an official committee appointed under the Bankruptcy Code. Therefore, in order to provide a benefit to the Debtors' estates the Ad Hoc Committee must show that it provided a benefit to all of the stakeholders in the estates not just that it advised or helped the similarly situated creditors that it was hired to represent. *In re ASARCO LLC*, 05-21207, 2010 WL 3812642, at *10 (Bankr. S.D. Tex. Sept. 28, 2010) (Slip Op.)

3

(Bankr. S.D. Tex. 1989). While the term "substantial contribution" is not defined in the Bankruptcy Code, the Fifth Circuit has defined it as "a contribution that is considerable in amount, value or worth." *Hall Fin. Group, Inc. v. DP Partners, L.P. (In re DP Partners, L.P)*, 106 F.3d 667, 673 (5th Cir.) *cert. denied,* 522 U.S. 815, (1997); *In re ASARCO LLC*, 2010 WL 3812642, at *7. Furthermore, "[f]ailing to show a direct, significant and demonstrable benefit to the estate caused by the actions of the applicant is, therefore, fatal to a substantial contribution claim." *In re ASARCO LLC*, 2010 WL 3812642, at *7 (citing *In re Eldercare Home Health & Hospice,* No. 04-71101, 2007 Bankr. LEXIS 879, at *7 (Bankr. S.D.Tex. Feb. 14, 2007); *In re Fortune Natural Res. Corp.,* 366 B.R. 549, 554 (Bankr. E.D.La. 2007); and *In re DP Partners, L.P,* 106 F.3d at 673).

8. Additionally, "[a]ctivities of a creditor or their counsel that are ordinary, expected, routine, or duplicative do not constitute a substantial contribution to a debtor's estate." *In re ASARCO LLC*, 2010 WL 3812642, at *8 (citing *In re Eldercare Home Health & Hospice,* 2007 Bankr. LEXIS 879, at *6; *In re Buttes Gas & Oil Co.,* 112 B.R. at 195; *In re General Homes Corp. FGMC, Inc.,* 143 B.R. 99, 103 (Bankr. S.D.Tex. 1992); and *In re Am. Plumbing and Mech., Inc.,* 327 B.R. 273, 283 (Bankr. W.D. Tex. 2005)). Thus, claims for substantial contribution may only be granted in rare or unusual circumstances. *In re ASARCO LLC*, 2010 WL 3812642, at *8.

2. <u>The Ad Hoc Committee Did Not Make Any Contribution Let Alone a "Substantial Contribution"</u>

9. The Ad Hoc Committee provides meager explanation of the benefits it allegedly provided. In fact, the Ad Hoc Committee's only explanation of any contribution it allegedly made is:

---

("However, merely being an active creditor in a bankruptcy case does not entitle that creditor to a claim for making a substantial contribution.").

- Opposing the Debtors' sale of the Sylvanfield Building, which the Court ultimately approved. The Ad Hoc Committee states, however, that "while the result was not what was desired, the efforts undertaken were necessary. Finally, there was a voice besides the Debtor's [sic] advising the Court of potential issues with actions proposed by the Debtor [sic]." (Application ¶ 5).

- Investigating the pre-petition financial affairs of the Debtors which resulted in providing a memorandum to the investors about the events prior to the filing for bankruptcy protection. (Application ¶ 6). A second memorandum was sent to advise the investors about the potential sale and opportunity to bid on the Amidee assets. (Application ¶ 6). Providing the investors' information on the value of the Debtors' assets to IRA custodians for certain investors which helped some investors avoid income tax and penalties for alleged premature distributions. (Application ¶ 6).

- Extending the deadline to file a proof of claim for the Tax Deed limited partnerships so that they could file claims as necessary against ACG. (Application ¶ 7).

However, all of the above amount to nothing more than conclusory statements that resulted in no material benefit to the Debtors' estates. Accordingly, the Debtors object to the Application on several grounds.

10. First, by the Ad Hoc Committee's own admission, opposing the sale of the Sylvanfield Building provided *no benefit* as the Court ultimately granted the sale despite its objection. As the services were unsuccessful, there cannot have been any benefit provided to the estates. Furthermore, the Ad Hoc Committee's objection almost resulted in the loss of the sale to the all-cash purchaser of the real property. Thus, opposing the sale of the Sylvanfield Building provided *no benefit* and was almost detrimental these Reorganization Cases.

11. Second, providing memoranda to the investors regarding the pre-petition history of the Debtors or about the proposed auction and sale provided no benefit to the Debtors' estates. If anything, such efforts were duplicative of those already undertaken by the Debtors and their counsel. From the beginning of the case, the Debtors have communicated with the investors and set up an e-mail service list allowing the Debtors to forward pleadings filed in these

Reorganization Cases to any investors who were interested in them. Additionally, the Debtors held two meetings with the investors to advise them of the status of the bankruptcy cases and answer their questions. Thus, any services provided by the Ad Hoc Committee were duplicative and provided *no benefit* to the Debtors' estates. In fact, although the Ad Hoc Committee references informing investors regarding the option to bid at the auction, no investors actually even participated in the Auction. Finally, advising the investors regarding their investments and communicating with IRA custodians provides no actual benefit to the Debtors' estates. Such services potentially provided benefit to the individual members of the Ad Hoc Committee, if anyone, thus the cost of such services should be borne by the beneficiaries, not the estate.

12. Finally, extending the deadline for the Tax Deed limited partnerships to file proofs of claim provided no benefit to anyone as *no proofs of claim were ever filed.* Further, preserving the right to file a proof of claim would not necessarily benefit an estate unless that claim resulted in a greater distribution to such debtor's creditors. The Ad Hoc Committee does not make such an allegation and cannot, as it never filed the proofs of claim. Thus, taking such action did not provide a substantial contribution to the Debtors' estates. Accordingly, the Ad Hoc Committee fails to prove by a preponderance of the evidence that it provided any benefit to these Reorganization Cases let alone a substantial contribution.

3. <u>The Ad Hoc Committee Provides No Causal Connection between its Services and the Alleged "Substantial Contribution"</u>

13. In order to satisfy this high threshold, the Ad Hoc Committee must establish that its' "'services have some *causal relationship* to the contribution.'" *In re ASARCO LLC*, 2010 WL 3812642, at *8 (quoting *In re Fotrune Natural Res. Corp.*, 366 B.R. 549, 554 (Bankr. E.D. La. 2007) (emphasis in quote); *In re DP Partners, L.P.*, 106 F.3d at 673). Conclusory statements as to causation or provision of a substantial contribution fail to establish that a required

substantial contribution has been made. *In re ASARCO LLC*, 2010 WL 3812642, at *8; *In re United States Lines, Inc.* 103 B.R. 427, 430 (Bankr. S.D. N.Y. 1989). Furthermore, the claimant cannot succeed if the asserted contribution would have occurred without its involvement. *In re ASARCO LLC*, 2010 WL 3812642, at *8.

14. Not only does the Ad Hoc Committee fail to articulate any benefit provided to these Reorganization Cases it also provides no causal explanation for how any of its alleged services were related to the contribution. First, the Ad Hoc Committee gives no rationale regarding any causal link between its services and a contribution to the Reorganization Cases. Second, the statements made by the Ad Hoc Committee are nothing but conclusory. The only statements made by the Ad Hoc Committee regarding the contribution it made are as follows: "This amount is outweighed by the benefits conferred upon the debtors' estates by the Committee's actions. Further, the benefits from the Committee's actions flowed to the entire creditor constituency. Finally the committee's services were not duplicative of services rendered by attorneys for other parties." (Application ¶ 13). Such conclusory statements provide no explanation for how the services provided any benefit to the stakeholders in the estates and not just its creditor constituency or how the services are linked to the contribution. Therefore, the Ad Hoc Committee cannot satisfy its burden of proof that it made a substantial contribution and that such contribution is causally related to the services it provided. Accordingly, the Ad Hoc Committee's Application should be denied in its entirety.

**B.   The Ad Hoc Committee Cannot Recover any Attorneys' Fees**

1. <u>The Ad Hoc Committee fails to allege the proper statutory authority for recovery of attorneys' fees</u>

15. Section 503(b)(4) allows the Court to, in turn, authorize an administrative expense for the:

7

> [R]easonable compensation for professional services rendered by an attorney . . . . of an entity whose expense is allowable under subparagraph . . . (D) . . . of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(4). In the Application, the Ad Hoc Committee only asserts a basis for recovery under § 503(b)(3) not (b)(4). Thus, even if the Court should determine that the Ad Hoc Committee provided a substantial contribution to these Reorganization Cases, such recovery should be limited to the amount the investors actually spent and should not include any attorneys' fees. According to the Application, the investors/members of the Ad Hoc Committee incurred no costs themselves. Rather, the members of the Ad Hoc Committee contributed $49,200 to payment of its counsel's fees. (Application ¶ 9). Therefore, the Ad Hoc Committee fails to satisfy the criteria of § 503(b)(3) as none of the expenses requested are on behalf of the actual members of the Ad Hoc Committee. Therefore, this Court should deny the Application in its entirety as the Ad Hoc Committee fails to allege the proper authority for payment of attorneys' fees.

2. <u>Even if the Ad Hoc Committee alleged the proper statutory authority, it has not satisfied the standards to recover attorneys' fees under § 503(b)(4)</u>

16.     Should this Court determine, however, that the Ad Hoc Committee is entitled to attorneys' fees under § 503(b)(4), to recover same the Ad Hoc Committee must establish that it made a substantial contribution. *In re ASARCO LLC*, 2010 WL 3812642, at * 10 ("Similarly, the Movants are not entitled to recover legal fees or expenses under section 503(b)(4) of the Bankruptcy Code absent a finding of a substantial contribution having been made." (citations omitted)). As argued above, the Ad Hoc Committee has made *no contribution* let alone a substantial contribution and as such its claim for attorneys' fees should be rejected as well.

17. Even if the Ad Hoc Committee can show that it made a substantial contribution, it still must satisfy § 503(b)(4)'s requirements to recover attorneys' fees. A party that has made a substantial contribution may recover its attorneys' fees if it can show that: (1) the compensation sought is reasonable; (2) the compensation is for an attorney's services; (3) the attorney is employed by an entity entitled to payment under § 503(b)(3); and (4) the requesting party actually incurred the compensation and expenses. *In re Energy Partners, Ltd.*, 422 B.R. 68, 87 (Bankr. S.D. Tex. 2009). In determining whether the fees are "reasonable," the Court should adhere to the following three-step process: "(1) ascertain the nature and extent of the services supplied by the attorney with reference to the time records submitted; (2) assess the value of the services; and (3) briefly explain the findings and reasons upon which the award is based, including a discussion of how each of the twelve factors from *Johnson* affected the court's decision." *In re Energy Partners, Ltd.*, 422 B.R. at 88 (citing *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1299–1300 (5th Cir. 1977)).

18. Problematically, the Ad Hoc Committee has not supplied this Court with any evidence that the attorneys' fees sought are reasonable nor have they alleged that the fees requested satisfy the requirements of the Fifth Circuit *Johnson* test. There was no value provided from the services performed by the Ad Hoc Committee's counsel to the Debtors' estates. Further, simply attaching time entries is not sufficient to satisfy the requirements of § 503(b)(4). Therefore, even if the Ad Hoc Committee made a substantial contribution—which it did not—it has not satisfied the standard for recovery of attorneys' fees.

**C. The Ad Hoc Committee Is Not Entitled to an Administrative Expense Claim**

19. Section 503(b)(1) states that "there shall be allowed administrative expenses . . . including–the actual, necessary costs and expenses of preserving the estate including–wages,

9

salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). "The Fifth Circuit has held that a § 503(b)(1)(A) expense 'must have been of benefit to the estate and its creditors.'" *In re Am. Coastal Energy Inc.*, 399 B.R. 805, 808 (Bankr. S.D. Tex. 2009) (citing *Tex. v. Lowe (In re H.L.S. Energy Co., Inc.),* 151 F.3d 434, 437 (5th Cir.1998)). The benefit test is used to determine whether or not the expenses were necessary. *In re Am. Coastal Energy Inc.*, 399 B.R. at 808.

20. The Ad Hoc Committee asserts that it "has performed services and incurred actual, necessary costs and expenses that were directed at preserving assets to the Debtors' estates." (Application ¶ 14). However, as discussed above, the Ad Hoc Committee provided *no benefit* to the Debtors' estates therefore it fails to prove how the services were necessary to the Debtors' estates. Merely opposing a sale, advising investors of the pending motions in the Reorganization Cases and extending the deadline to file claims and then not actually filing a claim are not "actual, necessary costs and expenses." In fact, such expenses are completely unnecessary and duplicative of the efforts the Debtors and the Debtors counsel were already providing in these Reorganization Cases. Accordingly, the Ad Hoc Committee is neither entitled to an administrative expense claim nor a claim for substantial contribution.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, the Debtors request that the Court (i) deny the Application in its entirety; and (ii) grant the Debtors any other and further relief deemed necessary and appropriate by this Court.

Respectfully submitted this 25th day of October, 2010.

**OKIN ADAMS & KILMER LLP**

By:     /s/ *Sara Mya Keith*
    Matthew S. Okin (TB# 00784695)
    mokin@oakllp.com
    Sara Mya Keith (TB# 24062938)
    skeith@oakllp.com
    1113 Vine St. Suite 201
    Houston, TX  77002
    Tel:  (713) 228-4100
    Fax: (888) 865-2118

**ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2010 I sent a true and correct copy of the above and foregoing **Objection** via the Court's CM/ECF electronic system and via US Mail Postage pre-paid to the parties listed below:

Ad Hoc Amidee Limited Partners Committee
c/o Marc Douglas Myers
3120 Southwest Freeway, Suite 320
Houston, Texas 77098
mm@am-law.com

United States Trustee's Office
606 N. Carancahua Street, Suite 1107
Corpus Christi, TX 78476

    /s/ *Sara Mya Keith*
    Sara Mya Keith